## WILLIAM HENRY ELLIOTT v. JOSIAH DELANEY, Appellant.

### Division One, February 25, 1909.

1. **BILL OF EXCEPTIONS: Two.** Where the abstract shows some evidence taken at the January term, and other evidence taken at the April term and judgment rendered at that term and a motion for new trial filed and overruled, and the record recites leave to file a bill of exceptions at the September term and a filing at that term, matter in the midst of the abstract separating the evidence heard at the January term from that heard at the April term and designating the latter as "Bill of Exceptions No. 2," will be considered extraneous, and the whole bill being approved by the trial judge and both parts filed on the same day, the whole will be considered as one bill, as signed by the judge, and as a part of the record.

2. **APPEAL: Affidavit.** If the abstract of the record proper recites in a narrative form that appellant filed an affidavit for an appeal, the appeal will not be dismissed for that the affidavit is not set out in full.

3. **EJECTMENT: Monetary Judgment.** Where the pleadings consist of an ordinary petition in ejectment and a general denial, plaintiff is entitled to an absolute judgment for possession if he is entitled to anything. He is not entitled to a judgment for so much money and a special execution against the lands for the amount of money.

4. **————: ————: Other Defenses: Option to Purchase.** Under a written instrument defendant was entitled to possession of the land during the lives of the makers, and "to have the privilege of taking and keeping said land in fee simple by paying the reasonable value thereof at the end of the term," and these facts are pleaded, in addition to a general denial, in answer to their grantee's ejectment. *Held*, that, conceding the instrument gave defendant the option to purchase the lands, a judgment against him for their value and awarding plaintiff special execution against them is erroneous on its face. The judgment ought to have been a conditional one for the possession of the land, the condition being that defendant pay the assessed value *instanter* or within a reasonable time, and upon his failure to do so the writ of ouster should go. Or the judgment should recite that defendant had exercised his option to purchase, and thereby the equitable title was in him, and made the assessed value a lien, and directed special execution.

5. **————: Parties.** In an ejectment suit, all the coparceners who own an interest in the land should be made parties.

6. **PAROL PARTITION.** It is requisite to a valid parol partition that all the cotenants be parties to the agreement and to the act of partition.

7. **EXECUTED OPTION: Right to Sell.** A written contract giving to the lessee the right to purchase at a reasonable price at the end of the leasehold term, is an executed option contract, if the consideration is expressed as having been paid. The lands are not sold, but the option is sold; that is, the lessee is given the right to elect to buy. The land is incumbered with that contract, and if recorded, and a subsequent conveyance is made by the makers, their grantee must take subject to the lessee's right to exercise his option, and the makers have the right to sell subject to that incumbrance.

Appeal from Clinton Circuit Court. *Hon. A. D. Burnes*, Judge.

REVERSED AND REMANDED.

*F. B. Ellis* for appellant.

(1)   The lease was duly recorded and was notice to plaintiff. Laws 1887, p. 183; Geer v. Lumber Co., 134 Mo. 94; Pike v. Martindale, 91 Mo. 268.   (2)   If the lease gave defendant a right to purchase the fee from the heirs, then plaintiff cannot recover.   It was beyond the power of the grantor to alienate his right from him.   It was a solemn instrument which all parties must respect.   Elliott could not sneak in as he is attempting to do, and deprive him of this right.   If defendant Delaney had a contract to purchase the land in question, from his deceased father, it is sufficient to defeat plaintiff's cause of action in ejectment. Harris v. Vineyard, 42 Mo. 568; Thompson v. Henry, 85 Mo. 451; Sampson v. Mitchell, 125 Mo. 217; Sieberling, Miller & Co. v. Tipton, 113 Mo. 381.   (3)   Any equity is sufficient to defeat an action in ejectment.   There are no equities in favor of one who brings ejectment. It is a legal action.   He must stand on the cold and exact letter of the law.   It is not so with the defendant; he can stand without any legal title, or, in fact, any title whatever, and unless plaintiff proves the title he is not entitled to recover.   Defendant in ejectment may set up in his answer any and all equitable defenses, he cannot be circumscribed and limited to one to suit the notions of the plaintiff, as is contended by plaintiff in this action.   Choteau v. Gibson, 76 Mo. 38; Butler v. Carpenter, 163 Mo. 597; Creech v. Childers, 156 Mo. 338.   (4)   There is no question of estoppel in this case as is contended by plaintiff. Plaintiff's interest has not in any way been affected by anything defendant has done.   His title, if any, has not been affected, nor has the condition of defendant been enlarged or improved.   The condition of the title is the same as when Mrs. Sterling died.

The defendant could not be estopped unless plaintiff had been misled to his injury. If defendant, by word or act, had induced plaintiff to purchase the land from Mrs. Sterling, then there might be a question of estoppel, but he did not. He has always claimed under his contract. Bank v. Ragsdale, 171 Mo. 169; De Berry v. Wheeler, 128 Mo. 90; Spurlock v. Sproul, 72 Mo. 503. (5) There is another reason why a recovery cannot be had in this case. It is shown by the evidence that Mary A. Sterling had some six or seven heirs who have an interest at least in this contract. How can this court settle their equities when they are not before the court? Rogers v. Wolf, 104 Mo. 1; Railroad v. Hulton, 102 Mo. 45; Ebersole v. Rankin, 102 Mo. 88, 44 Mo. App. 240. (6) Plaintiff cannot in any case sue in ejectment and recover for the market value of the lands or tenements. No party can recover on a different cause of action than that alleged by him. He cannot sue upon one cause of action and recover upon another. Henry Co. v. Bank, 208 Mo. 209; Caldwell v. Ryan, 210 Mo. 17. (7) A suit in ejectment is a plain action at law. Gray v. Payne, 34 Mo. 203; Magwire v. Taylor, 47 Mo. 115.

*E. C. Hall* for respondent.

(1) The abstract of the record proper offered by appellant is correct. The remainder of the abstract is unauthorized for the reasons: 1st. The first bill of exceptions, so called, was not approved and signed by the judge and not filed in time. 2d. Bill of exceptions No. 2, so called, was not filed. 3d. There is no bill of exceptions, and the judgment must be affirmed. Reno v. Fitz Jarrell, 163 Mo. 411; Cooper v. Maloney, 162 Mo. 684; Western Storage & Co. v. Glasner, 150 Mo. 426; Roush v. Cunningham, 163 Mo. 173; Wilson v. Railroad, 167 Mo. 323; State v. Beaty,

166 Mo. 581; Hayden v. Alkire Gro. Co., 88 Mo. App. 241; Hazell v. Clark, 89 Mo. App. 79; Hamilton-Brown Co. v. Williams, 91 Mo. App. 51; City ex rel. v. Deemar, 174 Mo. 122. (2) The record proper says that defendant filed an affidavit for an appeal, but there is no affidavit for appeal in the record, and this court has no jurisdiction of the case. State ex rel. v. Woodson, 128 Mo. 514; Railroad v. Powell, 104 Mo. App. 367; Peters v. Edge, 87 Mo. App. 284; Geising v. Schowengerdt, 24 Mo. App. 554. (3) If any error in the judgment was committed by the court it was in allowing defendant the right to buy the land; and that was done on defendant's own pleading. But plaintiff cannot complain because he has not appealed and defendant because he got what he asked for. Bushnell v. Ins. Co., 91 Mo. App. 523. (4) There was given by the instrument of lease a life tenancy or lease during the life of said Mary A. Delaney, and at her death the "said land to revert to and become the estate of said Mary A. Delaney." By this provision, defendant argues that, at the death of said Mary A. Delaney, the title of the land vested in the heirs of her and that during her lifetime she could not convey it. This claim is erroneous for the reasons: (a) The fee was not conveyed by said lease but remained in grantor. (b) As the fee remained in grantor, even if there had been a life estate instead of a tenancy simply, created by said lease, the remainder, even if limited to the heirs of grantor, or to her estate, would be void, because the fee was in grantor and there was at the time no heir or estate to take the remainder. 24 Am. and Eng. Ency. Law (2 Ed.), 398 and note 4; 2 Washburn on Real Prop. (3 Ed.), p. 685; 1 Ib., p. 51. (c) A deed from grantor to one for life, or *per autre vie,* which provides that the land shall revert to the heirs of the grantor, does not pass any title to the heirs and the grantor may convey the same by deed. 2 Wash., Real Prop. (3 Ed.), p. 686; 24 Am. and Eng.

Ency. Law (2 Ed.), 421 and note 4; Alexander v. DeKermal, 31 Ky. 345; Whaym v. Davis, 66 S. W. 827. (5) The instrument pleaded by defendant and on which he relies solely is nothing more than a lease for a term during the life of the lessor with an option to purchase at the end. It being an option, must be exercised promptly and in time. 21 Am. and Eng. Ency. Law (2 Ed.), 930, 931; Mason v. Payne, 47 Mo. 517. His acceptance of the option must have been not only prompt and on time, but unconditional and certain. Bruner v. Wheaton, 46 Mo. 363. (6) The option was not accepted at the end of the term, but, on the contrary, was repudiated by defendant. For the uncontradicted evidence shows that plaintiff called upon defendant after the death of Mary A. Sterling and asked him what he was going to do about that land and his option. He answered that he was not going to do anything, as the land belonged to him. And he followed that claim up by pleading his deed from said Mary Sterling made after the deed to plaintiff, and has never in any way accepted said option or told plaintiff that he would accept it and pay the reasonable value of said land, until and except by the amended answer which he has filed herein, in which he still maintains that he holds by a right superior to plaintiff. By this conduct defendant has forfeited any claim to such option. Pursley v. Good, 94 Mo. App. 389; Harwood v. Deimer, 41 Mo. App. 48.

GRAVES, J.—Plaintiff sued in ejectment for eleven acres of land in Clinton county. The petition is an ordinary petition in ejectment. The answer is first a general denial. By a second count the defendant pleads that he went into possession of the land in dispute under a certain written instrument of date December 8, 1877, the material part of which reads:

"To have and to hold unto the said Josiah Delaney, his heirs and assigns for and during the life-

time of the said Uriah Delaney and Mary A. Delaney, and at the death of said parties the said land to revert to and become the estate of said parties or either of them, the said Josiah to have all the improvements by him placed thereon or at his term hereof to be paid therefor their reasonable worth. The said Josiah Delaney to have the further privilege of taking and keeping said tract of land in fee simple by paying the reasonable value therefor, at the end of this term or to deliver it up, reserving all improvements at his discretion.

"Witness our hands and seals this 8th day of December, 1877,

"URIAH DELANEY,
"MARY A. DELANEY."

He then avers that such instrument was placed of record April 1, 1883; that in pursuance thereof he not only entered into the possession of said land, but placed valuable improvements thereon to the value of $300.

By another paragraph, denominated a further and another answer, it is averred that Mary A. Delaney and Uriah Delaney are now dead; that after the death of Uriah Delaney, the wife, Mary A., married one Sterling, but thereafter, in the year 1904, departed this life; that there has been no administration upon her estate, and that she left heirs at law; that after the death of the said Mary A. this defendant has been ready and willing at all times to pay her heirs the reasonable value of said land.

The third defense is thus stated: "Defendant for further answer to plaintiff's petition says, that on the 1st day of May, 1895, the said Mary A. Sterling and her husband conveyed to said plaintiff the said eleven acres of land described in plaintiff's petition, together with other lands; that at the time of the making of such deed, as aforesaid, the said Mary A. Sterling was without authority to make such deed and could

not and did not convey the title to plaintiff and that said deed constitutes a cloud upon the title to such land."

By the prayer of the answer it was asked that the deed described in that portion of the answer last-above set out be canceled so far as it related to the land in dispute; that the heirs (who by the way are not parties to the suit) be required to specifically perform the contract, and upon their refusal that the court "adjudge and decree the title to plaintiff in accordance with the contract" and for all further just and proper relief.

Reply is first a general denial, followed with this additional language: "Further replying the plaintiffs say that if it is true the defendant had at one time the option mentioned in said lease contract, still the plaintiff avers that the defendant at the time and after the death of Mary A. Sterling declared that he would not accept the proposition to purchase said land under and by virtue of said option but that he then and ever since that time asserted the absolute ownership of said land up and until after the trial of this case at the last term of this court at which time he filed his amended answer. Plaintiff says that defendant is estopped by his said conduct in repudiating said contract of option and that if he had any rights thereunder he had by such conduct waived the same. Wherefore the plaintiff renews his prayer of judgment."

By the bill of exceptions, No. 2, as it seems to be designated in print, it appears thus:

"Defendant strikes out of his amended answer all of the first count after the general denial in regard to the improvements put on the real estate and elects to stand upon the last count in the answer.

"It is agreed in open court by and between the attorneys for plaintiff and defendant that the evi-

dence heretofore taken in this case shall, as far as applicable, apply to this case also.''

On April 19, 1906, the judgment appealed from was entered. The case was tried at the January term, or the evidence was taken at that term. The judgment seems to be the second judgment entered in the cause at the April term. Omitting the description of the land, the present judgment reads:

''Now at this day comes the plaintiff by his attorney of record, and also comes the defendant by his attorney of record. And the plaintiff by leave of court withdraws his motion for a new trial herein and the court having considered the entry of judgment heretofore made herein at this term does here now set said entry aside and enter in lieu thereof and as and for the judgment in this case its judgment and decree as follows: From the pleadings and evidence adduced thereunder the court finds that the plaintiff is the owner and has all the right, title and interest in and to said land, subject to the right of defendant to take the same by paying a reasonable value for same, of the land described in the petition, to-wit, . . . That Mary A. Sterling is the common source of title and that plaintiff has purchased all the title of said Mary A. Sterling, that the value of the rents and profits of said land is ten dollars.

'The court further finds that under and by virtue of the lease offered in evidence the defendant is entitled to purchase all said land from the plaintiff at the reasonable value thereof; that the reasonable value of said land at the death of said Mary A. Sterling fifty dollars per acre amounting in the total to five hundred and fifty dollars; that after the death of said Mary A. Sterling and before filing his petition herein the plaintiff called upon the defendant and asked him what he was going to do under the terms of said lease, and that the defendant at that time refused to do anything but claimed to own the land

in suit. The court further finds that the defendant should pay the costs of this suit.

"Wherefore it is ordered, adjudged and decreed by the court that the plaintiff have and recover of the defendant the said sum of five hundred and fifty dollars and the costs of this suit; that the defendant may pay the sum of five hundred and fifty dollars, together with the costs of this suit, to the clerk of this court forthwith, which sum of five hundred and fifty dollars shall be paid to the plaintiff by the clerk upon the delivery to him by the plaintiff of a sufficient deed of conveyance of such land as above described to the defendant whereby plaintiff shall convey all his right, title and interest in and to said land to defendant, and which deed the clerk shall deliver to the defendant.

"It is further ordered and decreed that in case the defendant fails, neglects or refuses to pay such judgment then in such case the plaintiff shall have his writ of special execution against said lands and execution for all costs herein by him expended."

We set out the judgment because challenged in the briefs.

There is but little conflict in the testimony. It all shows that defendant took possession, under the lease or written instrument pleaded, in 1877, and has held possession ever since. This instrument was of record. It also shows that ten or twelve years prior to her death, Mrs. Sterling, formerly Mrs. Delaney, made the plaintiff a deed to this land, with sixteen acres adjoining it. Some five years before the suit she made a deed to defendant for the eleven acres, reciting the obligations in the lease, but for this deed defendant paid nothing. For his deed plaintiff paid $250 for the twenty-seven acres.

Two disputed points in the testimony are: (1) Plaintiff says that after the death of Mrs. Sterling he asked defendant if he would purchase the land under

his option in the lease and that defendant said he claimed the title under the lease. Defendant says that he was ready at all times to pay to the heirs a reasonable price for the land under the terms of the lease, but that plaintiff brought suit within a day or two after his mother's death. This is the first conflict, and, (2) the witnesses differ widely as to the value of the eleven acres at the death of Mrs. Sterling.

Further portions of the evidence will be noted in connection with the points made. For the present this sufficiently states the case.

I. Point is made that we can't consider the bill of exceptions. This case has several peculiar features. From this judgment it appears that the plaintiff was not satisfied with the first judgment of the court, and filed a motion for new trial. Then the plaintiff withdrew his motion, and thereupon the court of its own motion set aside the judgment (what it was does not appear) and immediately entered the judgment hereinabove set out.

It also appears that prior to January 27th some evidence had been taken in the case. Whether this was at the January term or not we do not know, except counsel for plaintiff in their brief say the cause was heard at the January term, 1906, and taken under advisement until the April term, when the judgment appealed from was entered. At that time defendant took leave to file a bill of exceptions during the September term, 1906, and the record entry shows that a bill of exceptions was filed at the September term in open court. In the statement we have set out in part what occurred on January 27, 1906. Then it appears that the defendant abandoned a part of his answer, and it was agreed that evidence theretofore taken should be considered in so far as applicable. This appears on page 57 of the printed record. At that point is where begins what is called a second bill

of exceptions. As showing that it was but a continuation of the evidence previously taken it will be observed that the evidence on that day begins with evidence for the defendant. What precedes this page is the testimony for the plaintiff as well as testimony for the defendant. On page nine of the abstract, after setting out the record entry showing the filing of a bill of exceptions in open court on September 27, 1906, at the September term thereof, the abstract says: "which bill of exceptions is as follows: (omitting caption)." Then follows the evidence above mentioned, and on page 73 we find the signature of the judge with the usual recital making it a part of the record. The only irregularity is in the recital on page 57, *supra,* which is in the body of the whole bill. In other words on page nine we have the beginning of a bill of exceptions, then this irregularity on page 57, and then the proper closing and signature of the judge on page 73. It must be borne in mind that the bill of exceptions mentioned on page nine was filed September 27, 1906, and the bill mentioned as signed by the judge on page 73 is signed on September 27, 1906. To our mind this extraneous matter at page 57 is not such as to authorize us to decline to look into the bill of exceptions and this contention of the plaintiff will be overruled. The discrepancy perhaps arose out of the testimony having been taken at two different dates, as frequently occurs in a cause tried before a court. There is enough here to indicate that the whole thing was signed by the judge on September 27, 1906, and filed as one bill of exceptions on said date.

We shall consider the bill of exceptions as properly a part of the record for our review, if such becomes necessary.

II. It is next contended that because the abstract of record does not set out the affidavit for appeal,

there is no case here and the alleged appeal should be dismissed. The abstract sets out this as a part of a verbatim copy of the entry made of record below:

"Defendant now files an affidavit for an appeal of this cause, and it is ordered by the court that an appeal of said cause be allowed to the Supreme Court, appeal bond fixed at $1,100 which is now filed with Josiah Delaney as principal and George W. Delaney and Joseph Delaney as security; which bond is now approved."

The first part of the record entries recites the overruling of the motions for new trial and in arrest of judgment, and the latter part the leave to file a bill of exceptions at the September term. This point has been fully covered by VALLIANT, C. J., in an opinion In Banc, and further discussion is not required. [State ex rel. Annie Brown v. Broaddus, 216 Mo. 336.]

This contention of respondents is therefore refused.

III. Plaintiff has insisted that we have nothing before us but the record proper, which insistence we have overruled, but the defendant challenges the sufficiency of the judgment, even on the face of the pleadings. Defendant contends that plaintiff has sued to eject the defendant from this land and has wound up without any judgment for possession, but with a money judgment for $550 and an award of a special execution against the land and execution for all costs. The judgment is awkwardly worded, but it is certainly erroneous on the face of the pleadings. Under the pleadings, but two things, outside of costs, could be involved in this case. First, was the plaintiff entitled to possession? If so, he was entitled to a judgment of possession, and not one ordering a special execution against the lands. Under his petition, if plaintiff was entitled to anything it was an absolute judgment of possession. This is the scope of a judgment based

upon his petition and an answer consisting of a general denial. Now, taking the answer beyond the general denial, let it be conceded without deciding it, that the lease or written instrument pleaded gave the defendant an option to purchase the lands from plaintiff as the grantee of one of the lessors, for the reasonable value thereof, which was evidently the view the trial judge took of the case, then what should the judgment have been? To our mind there should have been a conditional judgment for the possession of the land given for the plaintiff, the condition being that if the defendant paid the assessed value *instanter* or within a reasonable time, and the plaintiff made a good and sufficient deed to defendant, then no writ of ouster or restitution should go, but upon a failure of defendant to so pay the assessed value, then the writ for the possession should go. This judgment does not find that the plaintiff is even entitled to the possession. It finds that he has title but does not find that he is entitled to possession nor does it grant to him a proper writ to secure possession either upon condition or otherwise. Instead we have a personal judgment against the defendant for $550 with a special execution against the land for the collection thereof in the event the judgment is not paid.

Not only so but the wording is such as to make it a general judgment of $550 against the defendant. It says: ''Wherefore, it is ordered, adjudged and decreed by the court that the plaintiff have and recover of the defendant the said sum of five hundred and fifty dollars and the costs of this suit.'' It is true that the last clause provides for a special execution but there is nothing releasing the general judgment first above written.

Had the judgment recited that defendant had exercised his option to buy, and that thereby the equitable title was in him, and then made the assessed value a lien, and directed special execution, then it may be

such judgment would have been within the scope of the pleadings. As it is the judgment is erroneous upon its face, when considered under the pleadings and issues involved.

IV. Plaintiff by his proof undertook to deraign title from the United States. The title passes regularly from such source to one George Mayes. George Mayes died, leaving five children and a widow. The children were Sarah A. Hill, Máry A. Delaney (plaintiff's grantor and defendant's lessor), William A., James E., and John D. Mayes and the widow Rhoda Mayes. Upon the death of Mayes, the widow elected to take a child's part. This election was filed January 10, 1872. This left the land to be divided into six parts. January 11, 1872, George E. Mayes conveyed his interest to Rhoda Mayes, the widow. April 8, 1874, Sarah J. Hill and William A. Mayes conveyed to John D. Mayes and Uriah Delaney (the latter the father of defendant and one of his lessors) their interest. The deed calls it a two-fourths interest, but under the facts it could only be a two-sixths interest. By this conveyance it will be observed that Uriah Delaney acquired an undivided one-sixth interest in this land. November 24, 1883, John D. Mayes conveys by deed to Mary A. Delaney. The deed recites a one-half interest, but in fact John D. only held a one-sixth interest as the child of George Mayes and an additional one-sixth acquired in the deed to him and Uriah Delaney from Sarah J. Hill and William A. Mayes. Mary A. Delaney, therefore, acquired by the deed from John D. Mayes only a two-sixths interest, and as the child of George Mayes she inherited a one-sixth interest, making her in all a three-sixths or one-half interest, The paper title therefore appears: One-half interest in Mary A. Delaney (later intermarried with Sterling), or the same interest in her heirs or assigns,

if in view of the written instrument to the defendant she could assign.  One-sixth interest in the heirs of Uriah Delaney, of which defendant was one, and a two-sixths interest in Rhoda Mayes or her heirs, as she was dead.  The date of her death is not definitely shown, and such date becomes important.  She was not dead on January 11, 1872, for at that date James E. Mayes made a deed to her.  Whether she was dead April 4, 1874, when the deed to John D. Mayes and Uriah Delaney was made by Sarah J. Hill and William A. Mayes, does not appear.  If she was, then Uriah Delaney became seized of more than a one-sixth interest, because the two grantors in his deed would have inherited two-fifths of Rhoda Mayes's interest of two-sixths.  James E. Mayes would have inherited from his mother, Rhoda Mayes, and this interest neither he nor his heirs, if he is dead, have ever conveyed, so far as the record shows.  This deraignment of the record title shows that there were outstanding interests as above indicated, which of course would suggest further parties to this suit.

There is an attempt to prove a parol partition of the Mayes estate.  The date thereof is not fixed, but it was perhaps after the death of Rhoda Mayes. The witness when asked who divided the land replied, "The heirs."  This is as near as the partition agreement is shown or the parties thereto.  By the record title Uriah Delaney was a cotenant, but nothing before us shows that he participated in this parol partition. It is requisite to a valid parol partition that all the cotenants be parties to the agreement and to the act of partition.  Such does not clearly appear in this case.  Speaking of parol partitions, 21 Am. and Eng. Ency. of Law (2 Ed.), 1135, says: "It is, of course, necessary to a valid partition between cotenants that all of those owning interests in the property should be bound thereby.  If the partition or agreement for partition is not binding upon all the cotenants it is

binding upon none." Parol partitions are enforceable in equity but the partition must be clearly proven. [21 Am. and Eng. Emcy. Law (2 Ed.), 1140, and cases cited in the notes.] In this case the quantum of proof is hardly up to this standard, and especially not so as to the participation of Uriah Delaney, who by the record title was a cotenant. This proof perhaps can be made more satisfactory upon a retrial of the issues.

It may be that Uriah and Mary A. Delaney so claimed the possession as to make it adverse even as to a cotenant, but the Statute of Limitations is not pleaded nor does the proof seem to have been much developed on that theory. It could hardly apply to the interest of Uriah Delaney to say the least.

V. It is insisted that we construe the written instrument relied upon by the defendant.

That portion of the lease following the description we have set out in our statement of the case. The part preceding the description reads:

"Know All Men By These Presents, That Uriah Delaney and Mary A. Delaney, his wife, in Clinton county, State of Missouri, in consideration of the love and affection we bear to our son Josiah Delaney, as well as in consideration of the sum of one dollar, to us in hand paid, do hereby convey and lease to the said Josiah Delaney, the following described tract of land situate in Clinton county, Missouri, to-wit . . ."

We thus have the full instrument, barring the description of the property set out herein. In our judgment this written instrument is dual in character. First, it creates a leasehold in the grantee until such time as the survivor of the two lessors died. Second, by the last clause thereof, to-wit: "The said Josiah Delaney to have the full privilege of taking and keeping said tract of land in fee simple by paying the

Elliott v. Delaney.

reasonable value thereof at the end of this term, or to deliver it up reserving all improvements at his discretion," there is evinced an executed option contract, by the terms of which the lessee has the right to purchase at a given time, *i. e.*, at the death of the survivor of the two lessors. We say executed option contract, because the consideration therefor is expressed as having been paid. The judgment of the trial court seems to have been that there was a subsisting option contract, although the testimony is conflicting. Plaintiff shows but little time for the exercise of the option privileges, for the suit was filed within two or three days after the death of the last lessor. The question of whether or not the defendant had disclaimed his option contract privileges, or whether or not he had within a reasonable time elected to purchase under the option contract, are questions of fact.

One of the best discussions of a contract of this character we have found is in the case of Ide v. Leiser, 10 Mont. 5, wherein many authorities are by the court cited. DEWITT, J., in that case says: "We believe some definitions and distinctions will aid this discussion. There may be first, a sale of lands; second, an agreement to sell land; and third, what is popularly called an option. The first is the actual transfer of title from grantor to grantee, by appropriate instrument of conveyance. The second is a contract to be performed in the future, and, if fulfilled, results in a sale. It is a preliminary to a sale, and is not the sale. Breaches, rescission, or release may occur, by which the contemplated sale never takes place. The third, an option, originally is neither a sale, nor an agreement to sell. It is simply a contract, by which the owner of property (real estate being the species we are now discussing) agrees with another person that he shall have the right to buy his property, at a fixed price, within a time certain. He does not sell

his land; he does not agree to sell it; but he does then sell something, viz., the right or privilege to buy at the election, or option, of the other party. The second party gets *in praesenti,* not lands, or an agreement that he shall have lands, but he does get something of value, that is the right to call for and receive lands if he elects. The owner parts with his right to sell his lands (except to the second party) for a limited period. The second party receives this right, or rather, from his point of view he receives the right to elect to buy. That which the second party receives is of value, and in times of rapid inflations of prices, perhaps of great value. A contract must be supported by a consideration, whether it be the actual sale of lands, an agreement to sell lands, or the actual sale of the right to demand the conveyance of lands. A present conveyance of lands is an executed contract. An agreement to sell is an executory contract. The sale of an option is an executed contract. That is to say, the lands are not sold. The contract is not executed as to them, but the option is as completely sold and transferred *in praesenti* as a piece of personal property instantly delivered on payment of the price. Now, this option, this article of value and of commerce, must have a consideration to support its sale. As it is distinct from a sale of lands, or an agreement to sell lands, so its consideration must be distinct; although if a sale of the lands afterwards follows the option, the consideration for the option may be agreed to be applied, and often is as a part payment on the price of the lands. But there must be some consideration upon which the finger may be placed, and of which it may be said, this was given by the proposed vendee to the proposed vendor of the lands, as the price for the option, or privilege to purchase. We have been lead into this endeavor to make clear our views of these distinctions, because, in the argument, counsel did not seem to give them as much weight as they

seem to us to demand. We refer to the following authorities: Gordon v. Darnell, 5 Colo. 302; Bradford v. Foster, 87 Tenn. 4; Railroad v. Bartlett, 3 Cush. 224; Bean v. Burbank, 16 Me. 458, 33 Am. Dec. 681; DeRutte v. Muldrow, 16 Cal. 505; Johnston v. Trippe, 33 Fed. 530; Thomason v. Dill, 30 Ala. 444; Mers v. Franklin Ins. Co., 68 Mo. 127; Thorne v. Deas, 4 Johns. 84; Burnet v. Bisco, 4 Johns. 235; Lees v. Whitcomb, 5 Bing. 34; Bishop on Contracts, secs. 77, 78; McDonald v. Bewick, 51 Mich. 79; Schroeder v. Gemeinder, 10 Nev. 355; Woodruff v. Woodruff, 44 N. J. Eq. 355; Perkins v. Hadsell, 50 Ill. 216; Waterman on Specific Performance, sec. 200."

This case we cited with approval in the case of Montgomery v. Hundley, 205 Mo. 138, which was a case involving an option contract. Both the Montana case and ours should be read in the light of the facts. In each the option contract was for a limited time. The general policy of the law is against unlimited restrictions upon the right of alienation. We do not mean, however, that for a valid consideration, a person may not agree that he will not sell his property during his lifetime, and may not agree in his lifetime that a certain person shall have the right to say whether or not he will take the property at his death at a stipulated or an agreed price. If such agreement is made in writing, and placed of record, as in this case, it would no doubt bind both the heirs and the administrator or executor of the party making it.

The broad language used in the cases cited to the effect, "the owner parts with his right to sell his lands (except to a second party) for a limited period," should be considered as having reference to an unrestricted and absolute sale. They should not be construed to mean that there could not be a disposition of the owner's rights in the property, subject to the option contract. In the case at bar, Mrs.

217 Sup—3

Sterling (formerly Delaney) had and held at least a large part of the fee interest in the property. Plaintiff claims she held it all. This fee interest was incumbered first by the lease and second by this executed option contract. That part of the written instrument creating the option, i. e., the last clause, says nothing about reversion, or estates, or heirs or assigns. All above this clause constitutes the lease. The words "convey and lease" do not make it more than a lease. Mrs. Sterling, therefore, had a fee interest subject only to the encumbrances. Her remaining rights, whatever they may be, we think she could sell and plaintiff could buy. When the plaintiff did buy he became lessor of the defendant, and acquired such other rights as to the property as Mrs. Sterling had and could convey.

In the deed to plaintiff it specifically stated: "This deed is made subject to the provisions in a certain instrument recorded in Book 43 at page 201, whereby 11 acres of said land was limited to one Joseph Delaney during the life of Mary A. Delaney and Uriah, her then husband." This refers to the instrument relied upon by the defendant, and this deed shows that Mrs. Sterling was only attempting to convey what interests might be left to her. When plaintiff took this deed with the provisions therein contained he, as the assignee of Mrs. Sterling, accepted her shoes in so far as this land is concerned, and the encumbrances thereon created by the lease and option contract.

Defendant contends that she had no right to sell at all and her deed conveyed nothing to the plaintiff. This we think not well taken. By defendant we are cited to the case of Harris v. Vinyard, 42 Mo. 568, and cases following it. In the Vinyard case it was held that where the defendant held possession by a written contract of purchase from the ancestor, such contract of purchase would defeat ejectment by the heir.

This is true and is good law, but is not this case. What was involved in the Vinyard case was an actual contract of sale, not a mere option contract. The distinction is so thoroughly and clearly drawn in the Ide case, *supra,* that we will not attempt a further analysis of the two classes of contracts.

By counsel for plaintiff we are cited to authorities wherein life estates have been created by deeds and remainders reserved which are likewise inapplicable to the case at bar, or to the peculiar written instrument involved herein.

Whilst we are of opinion, as first indicated herein above, that the judgment should be reversed upon the face of the record proper, we have gone into other matters which would necessarily be involved upon a retrial of the cause. With these suggestions there should be no trouble in so adjusting the pleadings and the proof as to reach the real merits of this controversy as well as the real parties in interest, if they are not in fact before the court.

The cause will be reversed and remanded for further proceedings in conformity to the views herein expressed.

All concur.