**MISSOURI STATE HIGHWAY COMMIS-
SION, Plaintiff,**

v.

**Ora Ida STONE, Respondent (Frank D. Win-
terholer, Sr., and Grace Winterholer,
Appellants).**

**No. 7707.**

Springfield Court of Appeals.

Missouri.

March 22, 1958.

Emerson Foulke, Joplin, for appellants.

Karl Blanchard, Seiler, Blanchard & Van
Fleet, Joplin, for respondent.

RUARK, Judge.

This case involves rival claims to the
sum of $4,500 deposited in the registry of
the circuit court, which was the amount of
just compensation found by the commis-
sioners in condemnation of a portion of a
corner lot. This is the property directly
involved in this case, and we will refer to
it as a part of Lot 1, Staples Midway Sub-
division. The defendant-respondent, Ora
Stone, widow of W. J. Stone, is the owner
of such lot. The appellants, Frank and
Grace Winterholer, are the present owners
of property which we will call Lot 2 adjoin-
ing immediately on the west of the Stone
property. The principal issue is the effect
of an instrument executed by Ora Stone
and her now deceased husband and coten-
ant by entirety.

On July 28, 1945, the Stones, being then
the owners of both Lots 1 and 2, gave the
Winterholers an option to purchase Lot 2
at the price of $25,000. This property was
occupied by a residence, and there was lo-
cated thereon a well and water system
which evidently supplied water to some of
the property in the neighborhood, including
a business (grocery) building and a three-
room residence which were situate on Lot
1 (the property now in question). This op-
tion matured into a sale and purchase of
said Lot 2. Date of delivery of deed is not
clear, but it appears to have been filed for
record on September 10, 1945. On Sep-
tember 15, 1945, an instrument affecting
the possible sale of Lot 1 was signed and
acknowledged. Its provisions were as fol-
lows:

"Know All Men By These Presents,
that we, W. J. Stone and Ora Stone,
husband and wife, in consideration of
One Dollar and other good and valu-
able considerations paid by Frank D.
Winterholer, Sr. and Grace Winter-
holer, husband and wife, the receipt of
which is hereby acknowledged, for our-

selves, our heirs, executors and administrators agree that when and if we ever sell or propose to sell All of Lot Numbered One in Staples Midway Subdivision in the NE½ of the NE¼ of Section 22, Township 28, Range 33, Jasper County, Missouri, except the south 90 feet thereof, that the said Frank D. Winterholer, Sr. and Grace Winterholer, husband and wife, their heirs, assigns and successors in interest shall have an option to buy said property for the sum and amount of $10,000.00.

"It is further agreed that if and when W. J. Stone and Ora Stone, husband and wife, their heirs, executors and administrators advise in writing that they are prepared to sell and convey said property and offer a good and merchantable title to said property, then Frank D. Winterholer, Sr. and Grace Winterholer, husband and wife, their heirs, assigns and successors in interest shall have thirty (30) days from the date of the service of said notice in which to tender said $10,000.00 and complete the deal. If the said Frank D. Winterholer, Sr. and Grace Winterholer or their heirs, assigns and successors in interest shall fail to tender said $10,000.00 in accordance with the terms and conditions hereof, then this agreement shall be null and void in all respects."

It is agreed that the property (Lot 1) was never thereafter offered for sale, and the evidence does not show that any offer was ever made for its purchase.

About May 18, 1954, the State Highway Commission condemned a strip or strips of ground off Lot 1. Both appellants and respondent were made parties to the condemnation suit, and thereafter each of them asserted their claims to the damages ($4,500) awarded by the commissioners. On trial of these claims in the circuit court it was shown that the property involved in this case (Lot 1) is worth (after the taking of a portion by the State Highway Commission) from $15,000 to $18,000.

■ The circuit court found the instrument in question to be invalid for several reasons. With the conclusions reached we agree, but we find it necessary to consider only one. The agreement is void because is constitutes an unreasonable and unlawful restraint on alienation.

Instruments such as this, known as "refusal of purchase" by a considerable number of lawyers, generally designated as "pre-emption agreement" by the law writers, and occasionally referred to as "double option," are subject to the rule against unreasonable restraint on alienation and are valid or invalid in this respect depending upon whether the restraint is unreasonable. This depends upon the peculiar circumstances of each case. See 73 C.J.S. Property § 13, pp. 195, 196; Kershner v. Hurlburt, Mo., 277 S.W.2d 619, 625(10); see Courts v. Courts' Guardian, 230 Ky. 141, 18 S.W.2d 957. In considering the facts and circumstances which affect a pre-emption agreement (or refusal of purchase) attention must be paid (among other things) to (a) the purpose or purposes for which the restraint is imposed; (b) the duration of the restraint; and (c) the method of determining the price to be paid. We think these three things are to some extent inseparable and must be considered together and in relation to each other.

As to duration: It has been said that agreements imposing a restraint on alienation for a period which extends a right for a long and unreasonable or unlimited time or beyond a period analogous to the rule against perpetuities (life or lives in being and twenty-one years thereafter plus gestation period) is generally void as against public policy. Gill's Treatise on Real Property Law in Missouri, vol. III, p. 961, and cases digested; see 70 C.J.S. Perpetuities § 13, p. 592; 41 Am.Jur., Perpetuities and Restraints on Alienation, sec. 41, p. 84; Pratt v. Saline Valley Ry. Co.,

130 Mo.App. 175, 108 S.W. 1099, 1103; see Elliott v. Delaney, 217 Mo. 14, 116 S.W. 494, 499; Howell v. Deady, D.C., 48 F. Supp. 104(17); see anno., 162 A.L.R. 588, 603. In Magee v. Mercantile-Commerce Bank & Trust Co., 343 Mo. 1022, 124 S.W. 2d 1121, 1124, in order to avoid the result of holding void for indefiniteness (or as in violation of the rule against perpetuities) options which fix no time, it was held that a rule of "reasonable time under the circumstances" should be adopted. This rule was rejected in Kershner v. Hurlburt, supra, 277 S.W.2d 619, because the "plain implication" of the contract under consideration was that it was to be effective during the lives of the parties, and also because it would be most difficult ever to fix any standard for determining what is a reasonable time. In the case which we have here, the agreement specifically provides that it extends to the heirs and assigns of the parties. It would be difficult indeed to apply the reasonable time rule without manufacturing and inserting a contract contrary to the expressed words of the parties. Compare Saulsberry v. Saulsberry, 290 Ky. 132, 160 S.W.2d 654.

■ And it is said that "a pre-emption of unlimited duration, requiring offer to the pre-emptioner for a specified sum of money, is the most objectionable type of pre-emption." American Law of Property, vol. VI, sec. 26.67, p. 510. While a *method* of determining price is essential to the validity of a pre-emption agreement (Barling v. Horn, Mo., 296 S.W.2d 94, 97), a *fixed* price is a substantial restraint. Beets v. Tyler, 365 Mo. 895, 290 S.W.2d 76, 81; Restatement of Law of Property, sec. 413; see Washington University Law Quarterly, 1952, p. 337. If the property increases in value the owner is not liable to sell, and if it decreases in value the buyer is not likely to take advantage of his pre-emption right. The practical effect of such restraint is shown by the evidence in this case. The present value of the tract, after a part has been taken in condemnation, is from $15,000 to $18,000. This, added to the $4,500 on deposit in court (and which the pre-emptioners claim), makes the value approximately twice what it was assumed to be when the instrument was executed in 1945. It is not likely that the owner would willingly sell the property for one-half of the market price.

Harking back to the *purpose* or object to be accomplished, this was not a reservation of pre-emption for a limited time by a co-owner or an owner who was selling a part of his property. It did not involve a lease to the pre-emption claimant. It did not concern any item which made the permanency of ownership of Lot 1 necessary or especially desirable to the ownership of Lot 2, such as (as illustrative only) a building wall on a property line or an adjoining burial space. The property was in a commercial, or at least a semi-commercial, district and was occupied by a business building. "It would appear that the parties had no other stated purpose, and could have accomplished nothing more, than to arbitrarily restrain the alienation of * * *" Lot 1 for the lives of the parties and thereafter their heirs and assigns.

We think this case is completely ruled and controlled by the decision in Kershner v. Hurlburt, Mo., 277 S.W.2d 619, from which we have just quoted (loc. cit. 626), but we think the facts in this case are stronger than in the Kershner case, because there the duration of the agreement extended (by implication) for the lives of the parties, whereas here it is expressly stated to extend to the heirs and assigns.

The unilateral agreement above mentioned is void as an unreasonable restraint on alienation. It follows that the judgment should be affirmed. It is so ordered.

STONE, P. J., and McDOWELL, J., concur.