**Charlotte Godfrey COLE,
et al., Respondent,**

v.

**John PETERS, Appellant.**

**No. WD 56013.**

Missouri Court of Appeals,
Western District.

Aug. 31, 1999.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Oct. 5, 1999.

Application for Transfer Denied
Nov. 23, 1999.

Thomas Schneider, Columbia, for Respondent.

William D. Powell, Columbia, for Appellant.

Before Presiding Judge JOSEPH ELLIS, Judge HAROLD LOWENSTEIN and Judge VICTOR HOWARD.

LOWENSTEIN, Judge.

In this court tried action where the plaintiffs sought: 1) to quiet title to a parcel of real estate deeded to them by their parents in 1997; and, 2) a declaration that an option to purchase clause was unenforceable. The clause, covering this particular tract was included in a 1986 real estate contract for the sale of an adjoining tract between their parents and the defendant.

Plaintiffs-respondents, Charlotte Cole, Helen Gill, Martha Schaeffer and Paul A. Godfrey (hereafter Children) are the children of plaintiffs-respondents of Paul B. and Dorothy Godfrey (Parents). The Parents owned both a 105.7–acre tract (Tract C) and an adjacent tract of about seven acres (Option Tract) of real estate located in Boone County. In July of 1986, Parents executed a contract to sell Tract C. This contract also contained an option for defendant-appellant Peters, to purchase the Option Tract. The price for both tracts was $5,600 per acre. The children also signed the contract. The Parents' home was on the Option Tract. Peters intended to, and did develop Tract C. In December,

1986, Peters paid for and received the deed to Tract C. The portion of the contract pertaining to the Option Tract which contained some 6.9 acres, is central to the suit at bar.

The option part of the contract was in two parts. The first part contained language that as to the Option Tract, if the Parents decided to sell, or had both passed away, the Children were given a thirty day exclusive right to exercise the option to purchase. The price was $5,600 per acre plus an amount for appraised improvements. If any or all the Godfrey Children exercised the option, then they would grant to Peters the right to purchase the property under the terms and conditions of the second part of the option provision. The second part of the option to purchase portion provided that if the Children failed to exercise their rights within the time limits, then Peters had the right to purchase. The Parents were to notify both the Children and Peters at the time that they intended to sell. If the Children did not exercise the option, Peters had sixty days to declare his intention to buy. The terms for Peters were the same as for the Children. The contract contained a provision making it binding on the parties, "their heirs, executors and assigns."

In January 1997, by way of a gift, and reserving to themselves a life estate, the Parents conveyed the Option Tract to their Children. The Parents, on their behalf and for the Children, then listed the Option Tract for sale, and informed Peters the price was $310,000. The price was based on the Boone County Appraiser's value as of that that date. In June 1997, the appellant, Peters, attempted to purchase the property for $5,600 per acre pursuant to the second option of the contract. This attempt to exercise the second option was rebuffed, and respondents brought suit to declare the option portion of the contract void and unenforceable: 1) as constituting an unreasonable and unlawful restraint on alienation: and 2) because the language violated the Rule Against Perpetuities.[1]

On the issue of whether or not the contract language constituted an improper restraint of alienation, the trial court found that the approximately seven-acre Option Tract had a fair market value of $16,791 per acre in June of 1997. The parties agreed that at the time the attempt was made to exercise the second option, the land with improvements had a total value of $310,000. The court concluded the effect of the contract language under which Peters sought to exercise an option to purchase would have locked the Godfreys into selling the property in 1997 at the much lower value and price set out in the 1986 contract. The court held that without "any mechanism to adjust the contract price to obtain any semblance of current market value," the language constituted an unlawful restraint upon alienation.

The court also concluded that the option violated the Rule Against Perpetuities. The court found that the second option had no termination date. This coupled with the language that the contract was binding on the parties heirs and assigns etc., resulted in the effect of which was to make the duration of the second option perpetual, and effectively limited the Godfrey Children, their heirs and devisees from ever selling the property, resulting in a violation of the Rule.

■ Although the contract language here uses the term "option" when referring to the rights and obligations of the Godfreys and Peters, it would appear that the language does not create a true option in the sense the defendant is given no right to purchase through independent exercise of his decision to buy. Rather, the contract language here gives a preemptive

---

1. Several other grounds were alleged by the Godfrey Children and ruled upon in their favor by the trial court, but for the purposes of this appeal and its disposition, the court need only address the issues based on the conclusions of an improper restraint of alienation and violation of the Rule Against Perpetuities.

right to the defendant to buy only when the owner decides to list the property for sale. "A preemptive right differs from an option in that it gives a prospective purchaser the right to decide whether to buy the property before all others should the seller decide to sell. An option gives the purchaser the right to buy regardless of whether the seller wishes to sell." *Venture Stores, Inc., v. Pacific Beach Co., Inc.,* 980 S.W.2d 176, 184 (Mo.App.1998), citing *Tucker v. Ratley,* 568 S.W.2d 797, 800 (Mo. App.1978). This court's opinion in *Venture Stores,* goes on to explain that an option confers a privilege by means of a continuing offer until accepted within the time and terms limited in the option, and then becomes a new bilateral contract. 980 S.W.2d at 180. The contract here "attempted to create" in Peters a promise that the Godfreys "would make no sale" of the land "without first giving ... an option to purchase" to Peters at a fixed price, and created a contract of preemption. *Kershner v. Hurlburt,* 277 S.W.2d 619, 623 (Mo. 1955). Here the judgment of the trial court referred to this provision as a "purported option," but for the purpose of deciding this appeal on the issues involved, it is deemed the language in question created a preemptive right in Peters.

■■■■ The straightforward issue presented here is whether a real estate contract which grants a buyer a preemptive right to purchase land at a fixed price and which contains an "heirs and assigns" clause, but does not have any durational limit on exercise of the right to purchase, violates either the Rule Against Unreasonable Restraints of Alienation or the Rule Against Perpetuities, making any such contract provision to purchase void and unenforceable. The law of property does not allow an owner an unqualified right to disposal of his land. The Rule Against Unreasonable Restraints on Alienation and the Rule Against Perpetuities are examples of restraints on property rights, which the common law will not tolerate. These two rules are linked in that a violation of

the Rule Against Perpetuities also results in a violation of the Restraints Rule, but the reciprocal is not true. However, any interest which violates one or both of the rules, is void and unenforceable. *Kershner v. Hurlburt,* 277 S.W.2d at 623; *Nickels v. Cohn,* 764 S.W.2d 124, 132 (Mo.App.1989); *Mo. State Highway Comm'n v. Stone,* 311 S.W.2d 588, 589 (Mo.App.1958). Both rules are applicable to the contract here, a contract granting preemption. *Id.*

The scope of appellate review here is defined by *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976). Peters here argues the trial court's judgment was against the weight of the evidence, was not supported by substantial evidence, and was the result of an erroneous declaration and application of the law.

## RULE AGAINST UNREASONABLE RESTRAINTS ON ALIENATION

■■■■ Again, this rule is designed, "to prevent the inalienability of present or future vested interests." *Kershner v. Hurlburt,* supra at 623. Although not every restraint is declared a violation, this rule is based, among other reasons, upon the desirability of keeping real property responsive to the current exigencies of its current beneficial owner and the "desirability of avoiding the retardation of the natural development of a community by removing property from the ordinary channels of trade and commerce." *Id.* at 624.

■■■■ The factors to be considered in relation to one another, and to meet when determining if a preemptive right (requiring an owner who desires to sell to offer it to the offeree at a stipulated price) constitutes a reasonable restraint on alienation are: "a) the purpose or purposes for which the restraint is imposed; b) the duration of the restraint; and c) the method of determining the price to be paid." *Nickels,* 764 S.W.2d at 133; *Highway Comm'n v. Stone,* 311 S.W.2d at 589. The court need only examine factor c, the price. In the case at bar, the price was fixed as of the date of the contract. "[W]here a contract ... fix-

es the price at which property must be offered for sale there is a substantial curtailment of the property's alienability and ... is obnoxious to the rule against restraints." *Kershner, supra*, at 624. The Supreme Court went on to say that, where as in the case at bar, the stipulated value at the time of sale is greater than at the time of the contract, there is "an obvious restraint ... since the owner will retain the property rather than sell it at a great sacrifice." *Id.* at 625. The Court held the "better reasoned" cases held such preemptions void, unless the fixed price compares favorably to the value of the land at the time alienation is sought. *Id.*

A practical example of a factual situation described in *Kershner*, and a parallel set of facts to the case at bar occurred in *Highway Comm'n v. Stone, supra*, 311 S.W.2d at 589.

In *Stone*, the owners of a lot (Lot 1) entered into a preemption agreement with another party giving them the right to purchase Lot 1 at the price of $10,000. *Stone*, 311 S.W.2d at 589. However, the lot was appraised nine years later at a value of $15,000 to $18,000, with a strip of land which had been condemned on Lot 1 adding $4,500 to the land's value (damage award). *Id.* Thus, if the owners ever sold the land, they would have to give the option of buying the land to the other party for approximately half of what the land was worth because of the previously executed agreement. *See Id.* at 590. The court ruled that it was unlikely that the owner would ever sell the land because of this marked difference in the value, and therefore the agreement was void under the Rule Against Unreasonable Restraints on Alienation. *See Id.*

■ In comparison, Respondents, the Godfreys, find themselves in an even worse situation than the sellers in *Stone*. *See* 311 S.W.2d at 590. Here, the Godfrey parents originally contracted in 1986 to give Peters the preemptive right to buy the 6.961–acre tract for a fixed price of $5,600 per acre (total of $39,981.60), which

was considered fair market value at the time, plus the fair market value of the improvements thereon. However, on June 10, 1997, the parties stipulated that the tract was worth $16,791.40 per acre (total of $116,028.57). Thus, if the contract were enforced the Godfreys would receive only 33.4% of its fair market value, while the sellers in *Stone* would have received 50% of the actual value of their land. *See Stone*, 311 S.W.2d at 590. Since the court ruled in *Stone* that a difference of half the value in a fixed price made the preemption agreement void under the price element of the Restraint Against Unreasonable Alienation, this court must reach the same conclusion. *See Stone*, 311 S.W.2d at 590. This restraint on price is a clear violation of the Rule Against Unreasonable Restraints on Alienation, and therefore this court affirms the conclusion that this agreement is unenforceable. *Kershner*, 277 S.W.2d at 623; *Nickels*, 764 S.W.2d at 133; *Stone*, 311 S.W.2d at 590.

## RULE AGAINST PERPETUITIES

■ The Rule Against Perpetuities prohibits the granting of an estate which will not necessarily vest within a time limited by a life or lives then in being and 21 years thereafter, together with the period of gestation necessary to cover cases of posthumous birth. *Nelson v. Mercantile Trust Co.*, 335 S.W.2d 167, 172 (Mo.1960); *Trautz v. Lemp*, 329 Mo. 580, 46 S.W.2d 135, 138 (1932); *Nickels*, 764 S.W.2d at 132.

■ A preemption will not be enforceable if the interest cannot vest within 21 years and the period of gestation after some life in being at the creation of the interest. *Nelson*, 335 S.W.2d at 172; *Nickels*, 764 S.W.2d at 132; *Stone*, 311 S.W.2d at 590. Again using the example of Stone, we can see how such an interest violates the Rule Against Perpetuities. *See* 311 S.W.2d at 590. When the owners granted the preemptive right to purchase Lot 1, they granted a right from them-

selves, their heirs and assigns to the buyers, their heirs and assigns. *Stone*, 311 S.W.2d at 589. The duration of the agreement was thus extended for the lives of the parties, and their heirs and assigns. *Nickels*, 764 S.W.2d at 132; *Stone*, 311 S.W.2d at 589. This was a clear violation of the Rule Against Perpetuities and therefore made the contract unenforceable. *Nelson*, 335 S.W.2d at 172; *Nickels*, 764 S.W.2d at 132; *Stone*, 311 S.W.2d at 590.

However, a preemption does not violate the Rule Against Perpetuities if it is drafted so that it is personal to those making the promise. *See Kershner*, 277 S.W.2d at 623; *Nickels*, 764 S.W.2d at 132; 61 Am.Jur.2D 65. For example, the contract at issue in *Nickels*, created a preemptive right which did not violate the Rule Against Perpetuities. See *Nickels*, 764 S.W.2d at 127. There, in a divorce settlement, a wife quitclaimed a piece of property to her husband. *Id.* However, the parties contracted that if the husband desired at any time to sell the property, he must first give the parties' three sons 15 days notice of his desire to sell, and 15 days for the sons to make payment upon the land at a cost of $38,500.00. *Id.*

There, the court found that the preemptive right created by the quitclaim deed did not violate the Rule Against Perpetuities because it only extended to the parties themselves, and their three sons. *See Id.* at 132. Thus, the right was personal to the parties involved, and would terminate upon their death. *Kershner*, 277 S.W.2d at 623; *Nickels*, 764 S.W.2d at 132. Since the duration of the right is measured by the lives of the three sons as lives in being, the Rule Against Perpetuities was not violated. *See id.* at 133; *see also Kershner*, 277 S.W.2d at 623 (rights conferred by preemption contract were enforceable because they were personal to the holders and terminated at their deaths).

Here, the preemptive right granted to the Appellant had an "heirs and assigns" clause like in *Stone*. *See Stone*, 311 S.W.2d at 590. The final clause of the contract in this case holds that, "[T]his

Agreement shall be binding upon the parties, hereto, their heirs, executors, administrators and assigns." Much like the agreement in *Stone*, the contract here extended beyond the lives of the parties to their heirs and assigns. *See Id.* This clause extended the interest far beyond the 21 years past the lives of being of the parties. *Nelson*, 335 S.W.2d at 172; *Nickels*, 764 S.W.2d at 132; *Stone*, 311 S.W.2d at 590. Had the parties made the contract personal, like in *Nickels*, this contract would have passed muster under the Rule Against Perpetuities. *Kershner*, 277 S.W.2d at 623; *Nickels*, 764 S.W.2d at 132.

Alternatively, Peters argues that even if the contract violates the Rule Against Perpetuities, Section 442.555, RSMo 1994 saves the day. Essentially, this statute modifies the Rule in Missouri by providing that if a provision of limitation violates the Rule, and other limitations which would be valid but for the offending provisions, the valid provisions shall stand unless the invalid provisions are so essential to disrupt the dispositive scheme of the grantor. For a court to find an alternate construction, which would not violate the Rule Against Perpetuities, the "heirs and assigns" clause, which modifies the entire agreement, would have to be ignored.

In conclusion, the agreement violates the Rule Against Unlawful Restraints of Alienation because the fixed price of the agreement is less than a third of the value of the market price at the time the preemption was exercised. The agreement also violated the Rule Against Perpetuities because there was no duration to the contract, and because the rights to preemption were not personal to the parties, but extended to their heirs and assigns. The judgment of the trial court declaring these portions of the contract null and void is affirmed.

All Concur.