FEDERAL LAND BANK OF ST. LOUIS v. MILLER.

Opinion delivered October 19, 1931.

416

*J. R. Crocker,* for appellant.
*Oliver & Oliver,* for appellee.

SMITH, J. This suit was brought by the Federal Land Bank of St. Louis, hereinafter referred to as the Loan Company, to foreclose a deed of trust in its favor executed by James B. Miller and wife. Mrs. Malinda Miller, the mother of James B. Miller, filed an intervention, in which she alleged the truth of the following facts:

Prior to March 24, 1922, intervener and her husband, J. T. Miller, owned in fee the land described in the complaint, and on the date mentioned she and her husband conveyed said land to their son, James B. Miller, in consideration of an agreement on his part to suitably maintain them in accordance with the manner in which they had previously lived, and this agreement was recited as the consideration for their deed to their son; that their son had failed and refused to keep his agreement; that he is now insolvent and unable to prevent the foreclosure of the deed of trust. She further alleged that her husband was dead, and that she was dependent upon the land, which at the time of its conveyance to her son was the homestead of herself and her husband, for her support. She therefore prayed that the deed to her son be canceled, but, if that relief were denied, that a lien be declared in her favor for a sum sufficient, her expectancy of life being taken into account, to support her for the remainder of her life.

Testimony heard at the trial was to the following effect: Intervener and her husband owned a quarter section of land, and they deeded eighty acres to each of two sons, and the consideration recited in each of the deeds was "the sum of one dollar and maintenance to us paid." These deeds were duly acknowledged and recorded, and the two sons entered into the possession of the land conveyed to them respectively. At the time of the execution of these deeds a written contract was entered into, which was not placed of record, in which the agreement in regard to maintenance was amplified.

Mrs. Miller, the mother, lived first with one son and then with the other, but finally James B., through his dissipation, became unable to support her. James B. never at any time repudiated his obligation, but was unable to comply with it, although he continued to make small contributions to his mother's support.

It is contended that Mrs. Miller has estopped herself to attack the right of her son, James, to execute the deed of trust here sought to be foreclosed, for the reason that she permitted him to execute the deed of trust. She denied, however, that she had any knowledge of the execution of this instrument until after the loan had been consummated, and no attempt was made to show that she had said or done anything to induce the belief that she had waived any of the benefits reserved in the deed to her son. On the contrary, the loan company had no knowledge of the recital as to maintenance until long after the loan had been made, as the abstract of the title submitted for examination recited the consideration to be "the sum of one dollar to us paid," and contained no reference to any agreement for maintenance. But there was no attempt to charge Mrs. Miller with knowledge of or responsibility for this omission in the abstract, whether it was fraudulently done or not. The court found that Mrs. Miller had done nothing to waive the agreement for her maintenance, and we think the testimony fully supports that finding.

We think no importance is to be attached to the contemporaneous written agreement on the part of Mrs. Miller's children to support her and her husband, as that contract was not of record, and as to that writing the loan company is an innocent purchaser. But not so as to the deed itself. The deed was the instrument under which James B. Miller acquired title to the land which he mortgaged, and the loan company is, of course, affected with knowledge of its recitals, although they were not shown in the abstract of title. *Madden* v. *Suddarth,* 144 Ark. 79, 221 S. W. 457; *McLaughlin* v. *Morris,* 150 Ark. 347, 221 S. W. 457; *Star Lime & Zinc Co.* v. *Arkansas Nat. Bank,* 146 Ark. 246, 225 S. W. 322.

Many decisions of this court have upheld the validity of conveyances such as the one from Mrs. Miller and her husband to their son, and these cases have defined the rights of grantors in such instruments. One of the comparatively recent cases on this subject is that of *Edwards* v. *Locke,* 134 Ark. 80, 203 S. W. 286, where we said that this court is committed to the doctrine, which is supported by the great weight of authority, as announced in 4 R. C. L., p. 509, § 22, that "where a grantor conveys land, and the consideration is an agreement to support, maintain and care for the grantor during the remainder of her or his natural life, and the grantee neglects or refuses to comply with the contract, that the grantor may, in equity, have a decree rescinding the contract and setting aside the deed and reinvesting the grantor with the title to the real estate." (Citing cases.) It was there further said: "The rationale of the doctrine is that an intentional failure upon the part of the grantee to perform the contract to support, where that is the consideration for a deed, raises the presumption of such fraudulent intention from the inception of the contract, and therefore vitiates the deed based upon such consideration. Such contracts are in a class peculiar to themselves, and where the grantee intentionally fails to perform the contract, the remedy by cancellation, as for fraud, may be resorted to regard-

less of any remedy that the grantor may have had also at law." (Citing cases.)

We therefore hold that the intervener had an interest in the land which she had the right to assert.

It was shown that the loan company had paid certain taxes duly assessed against the land after default made, and the court held that these taxes constituted a first lien on the land, "which lien shall be prior to any claim of homestead or dower rights the said Malinda Miller may have in said property," and a decree for the foreclosure thereof was awarded.

The decree of the court below denied intervener's right to absolute rescission, and declared that the deed of trust was a valid lien on the land, subject to her right to maintenance, and she does not complain of that decree.

The court, in effect, found that all the rents will be required for intervener's maintenance, and that she is entitled to the possession of the rents and profits accruing from said property during her natural life, and that out of said rents and profits she shall be required to pay the taxes, with the provision that, if she failed to pay the taxes, the loan company may do so, and shall have a first lien on the land therefor, and that the land may be sold by the commissioner named for that purpose in the manner there stated. We think this decree accords with the equity of the case.

We make no review of the testimony tending to show that intervener knew her son intended to mortgage the land, although the preponderance of the testimony appears to support her statement that she was unaware of that fact, because it is not contended that she said or did anything to induce the loan company to make the loan, or that she had waived any right to her maintenance. Of course, her son acquired by the deed an interest in the land which he might convey with or without his mother's consent, subject, of course, to the right which she had reserved. The court recognized this right in its decree.

It is insisted that, although the plaintiff loan company is affected with notice of recitals contained in the

deed to their mortgagor, these recitals are too ambiguous and uncertain to put it upon notice that the consideration had not been fully paid. We do not think so. The deed recited as having been paid a dollar, a nominal consideration, and the recital of "maintenance to us paid" was certainly sufficient to put one on notice that there was some consideration other than the dollar, the receipt of which was acknowledged.

The reasonable construction of the language there employed was that the maintenance of the grantors was, in part at least, the consideration for the deed, and that this maintenance referred to an assumed obligation which remained to be performed. Certainly, it was not a recital which the loan company had the right to ignore, as the slightest investigation would have disclosed the facts.

In 38 C. J., page 338, chapter Maintenance, it is said that "maintenance" is a large term, the meaning of which depends on the surrounding circumstances and the connection in which it is applied, and citations are made to cases giving various definitions, among others "act of maintaining; keeping up, supporting; livelihood; means of sustenance, etc.," and, as applied to a person, to mean "supply of the necessaries of life; livelihood; the furnishing by one person to another, for his support, of the means of living, or food, or shelter, clothing, etc.; * * *."

We have said that the loan company had no actual knowledge of the recital in the deed, but we have also said that it was charged with this notice, as it appeared in the deed through which their grantor acquired his title, and the intervener did nothing to prevent this constructive notice from becoming actual.

The insistence that the intervener is barred by the statute of limitations from the assertion of her claim of maintenance may be disposed of by saying that her son and grantee never at any time repudiated the obligation which he assumed in consideration for the execution and delivery of the deed to him.

The decree of the court is correct, and is therefore affirmed.

KIRBY, J., dissents.