PUBLICITY BUILDING REALTY CORPORATION, a Corporation, for Its Own Account and as Trustee of an Express Trust for NELSON CHESMAN & COMPANY, a Corporation; RICHARD PENDERGAST and LOUIS H. BUDKE, Appellants, v. ROBERT A. THOMANN, Guardian of the Estate and Person of GEORGE C. V. FESLER, a Non Comp.; LEE HESS, Trustee for GEORGE C. V. FESLER; MARION L. J. LAMBERT, Trustee for GEORGE C. V. FESLER; TRAVELERS INSURANCE COMPANY OF HARTFORD, CONNECTICUT, a Connecticut Corporation; CHIPPEWA TRUST COMPANY, a Missouri Corporation; GEORGE C. V. FESLER, ESTELLE L. HESS, JUNE E. HESS, a Minor, by EMERSON BAETZ, Guardian ad litem, and WILLIAM HESS.—No. 38286. —183 S. W. (2d) 69.

Division One, July 3, 1944.

Rehearing Denied and Opinion Modified, October 9, 1944.

Motion to Set Aside Overruled, November 6, 1944.

494

*Taylor R. Young, Stephen A. Boggiano, James T. Riley* and *Alvin Goldman* for appellants.

496

*Lee, Fricke & Lee* for Lee Hess, Estelle L. Hess, June E. Hess and William Hess, respondents.

498

DOUGLAS, J.—Plaintiffs, appellants, term this action a creditors' bill. They sue in twelve counts on eleven promissory notes and a contract for the payment of money for a total of $11,595.19.

The debtor is defendant George C. V. Fesler, a druggist and manufacturing chemist. Long preceding the controversies of this lawsuit Fesler created the formula for a cosmetic which he named "Dew." He manufactured and marketed this product successfully first in his individual capacity and later under the name of George C. V. Fesler Company. He interested Marion L. J. Lambert in Dew and with him formed the Lambert-Fesler Company which took over the business of the George C. V. Fesler Company. After two years Fesler retired from active participation in this company. He had a contract with the company under which he received substantial monthly royalties on the sale of Dew. He owned stock in the company. Fesler then created a formula for a new cosmetic which he named Petalis. A company was formed, George C. V. Fesler, Inc., to manufacture and market this product. Shares of stock were sold by stock brokers to the public. Heavy commitments for advertising were incurred with Nelson Chesman and Company, trustor of plaintiff Publicity Building Realty Corporation. The Publicity Corporation and Nelson Chesman Company had interlocking boards of directors. Plaintiffs Pendergast and Budke were officers of both companies. The Nelson Chesman Company later made an assignment for benefit of creditors to plaintiff Max W. Kramer.

Petalis was not a success. Fesler, Inc., became indebted. Its chief and largest debtor was Nelson Chesman Company, to which it owed $16,809.37. Part of this indebtedness was represented by the promissory notes sued on. Fesler, Inc., executed ten of these notes and Fesler endorsed them.

Fesler became involved in some criminal charges. In October, 1931, he gave defendant Lee Hess, an old friend and business associate, his general power of attorney, transferred to him his stock in Lambert-Fesler Company, and absconded to escape trial. While he was a fugitive from justice he jumped from state to state, visited Europe and Cuba. He kept in touch secretly with Hess through third persons and by communications in code. Hess collected his monthly royalties and according to instructions made monthly remittances to him, and to his mother and paid certain bills. After several years Hess and Fesler met covertly at Highland, Illinois, where Hess was authorized

to sell to Lambert Fesler's stock in the Lambert-Fesler Company and his royalty contract. From the proceeds of the sale Hess paid some of Fesler's debts. Sometime after the sale Hess met Fesler in New Orleans and turned over to him $20,500 as the balance of the proceeds. Several weeks later, on March 13, 1934, this suit was filed.

The petition charges that Fesler and certain defendants "entered into an unlawful combination or conspiracy to defraud the creditors of said Fesler." Plaintiffs pray that the assignment of the royalty contract from Fesler to Hess and then from Hess to Lambert be set aside and title to the contract vested in Fesler. Plaintiffs ask as alternative relief that property of Fesler on deposit with Chippewa Trust Company in the name of Hess, and the contents of ▮ a safe deposit box in the Jefferson-Gravois Bank belonging to Fesler but held in the name of Hess, and the cash surrender value of certain insurance policies bought by Hess with funds alleged to belong to Fesler be sold and the proceeds, if sufficient, used to pay the debt to plaintiffs.

While the suit was pending Fesler returned to St. Louis and was lodged in jail. While there he filed an intervening petition in this case through plaintiffs' attorneys and another in which he admitted he executed the notes sued on; that he had transferred to Hess the stock and royalty contract; but denied he did so to defraud creditors; that Hess sold the stock and contract to Lambert; and that Hess had not accounted to Fesler for the entire proceeds of the sale. He asked for an accounting from Hess and that Hess hand over any property or funds due him.

The case was referred. The first referee died before completing his duties. The case was next referred to two referees and one of them died before submitting his findings. The surviving referee made a report to the court. He recommended judgment against Fesler on the first count for $2,345.81 and on the twelfth count for $814.35. He found the notes sued on in counts two to eleven inclusive had been paid. He found plaintiffs were not entitled to equitable relief. The court entered a decree in accordance with the referee's findings, gave judgment against Fesler on counts one and twelve, dismissed counts two to eleven inclusive, and assessed the costs jointly against plaintiffs and Fesler. Plaintiffs have appealed.

▮ The fact plaintiffs were simple rather than judgment creditors did not affect their cause of action in the first instance. They were entitled to institute their action under the recognized exception to the general rule that claims need not be first put to judgment where the debtor has absconded and no personal judgment can be obtained against him. State ex rel. Brigance v. Smith, 345 Mo. 793, 135 S. W. (2d) 355; Curlee Clothing Co. v. Boxer (Mo. App.), 51 S. W. (2d) 894.

For the purpose of our discussion it does not matter whether this action is a creditors' bill, as the parties term it, or a suit to set aside a transfer in fraud of creditors under the statute. Sec. 3507, R. S. 1939. A creditors' bill is generally understood to be one to enforce the payment of debts out of equitable assets which cannot be reached by levy and sale or execution at law. If this case belongs in such classification, plaintiffs have not sustained the burden cast upon them to show the assets they seek to subject to the payment of their claim are the property of Fesler. The insurance companies have dropped out of the suit. They filed an interpleader in the United States District Court stating the policies had been assigned to the Collector of Internal Revenue and paid the amount of the cash value of the policies into that court where plaintiffs and the collector are now contending for it. Plaintiffs dismissed as to the Jefferson-Gravois Bank. We do not find in the record, nor is there pointed out to us any evidence whatever about the property alleged to be on deposit with the Chippewa Trust Company. There is no finding that defendants have any property of Fesler's.

If this suit is regarded as one to set aside a fraudulent transfer we find again plaintiffs have not sustained the burden of proof. Facts have not been proved which give rise to a presumption the transfer was fraudulent. There is no evidence of an intent to defraud plaintiffs. On the contrary the evidence shows that plaintiffs were preferred over other creditors. Furthermore, plaintiffs have dismissed as to Marion L. J. Lambert and Marion Lambert, Inc., successor to Lambert-Fesler Company. They have thereby abandoned their attempt to set aside the sale of the stock and royalty contract. The judgment denying equitable relief was proper.

The question of Hess' duty to account to Fesler under the intervening petition was not determined. The referee properly found the intervening petition should not have been permitted to be filed because it was neither consistent with plaintiffs' claim nor united with defendants in resisting plaintiffs' claim but injected an independent controversy. Monticello Bldg. Corp. v. Monticello Inv. Co., 330 Mo. 1128, 52 S. W. (2d) 545.

After the referee filed his report stating the intervening petition was improperly filed, but before the court took any action upon the report, Fesler dismissed his intervening petition and by leave filed a general denial. He had the right to dismiss his petition under Section 1111, R. S. 1939 which provides: "The plaintiff shall be allowed to dismiss his suit or take a nonsuit at any time before the same is finally submitted to the jury, or to the court sitting as a jury, or to the court, and not afterward." We permitted a plaintiff to dismiss his suit after the filing of a referee's report and before action upon it by the court in Everett v. Taylor, 32 Mo. 390.

█ The referee found the notes described in counts two to eleven inclusive had been paid. The evidence shows that Fesler was authorized by his company to negotiate for the payment of the company's debt to Nelson Chesman Company which comprised these notes and the advertising account by conveying to the latter company business property owned by Fesler, Inc. The property was conveyed to plaintiff Pendergast, president of Nelson Chesman Company acting as trustee for that company, in satisfaction of the debt. Pendergast took possession of the property. He testified that the notes were not surrendered because Fesler, Inc., was on the verge of bankruptcy and Nelson Chesman Company was advised not to surrender the notes until four months had elapsed after receiving the deed.

The parties entered into an agreement by which Fesler could buy back the property for the same consideration for which it was conveyed, i. e. the amount of the debt. The question is raised whether the agreement, when construed with the deed, converts the latter into a mortgage securing the debt rather than the payment of it. The instruments themselves do not permit such a construction. The deed is a general warranty deed. The agreement to convey back recites that Pendergast, grantee in the deed, owns the property in fee simple. It provides that Fesler may purchase the property within two years but it also provides that during that period Pendergast may sell the property to any one else at any price after first offering it to Fesler for the same price. These recitals are contradictory to the theory that the deed was security for the debt. The agreement merely gives Fesler a two-year option to purchase. Furthermore, extrinsic evidence indicates the parties intended the conveyance of the property was a payment of the debt, not as security for it. The intention of the parties must control. Williamson v. Frazee, 294 Mo. 320, 242 S. W. 958.

█ When it was agreed to convey the property in payment of the debt it was believed that title, although owned by Fesler, Inc., stood in the name of Fesler individually. Therefore Fesler executed the deed in his individual capacity. A title certificate erroneously showed he had conveyed good title to Pendergast. It was later learned title was not in Fesler individually, but in Fesler, Inc. Plaintiffs did nothing about getting a deed from Fesler, Inc., although the board of directors of the latter company had authorized the deal and plaintiff Budke, an officer of Nelson Chesman Company, was also vice president of Fesler, Inc. Nelson Chesman Company later acquired legal title to the property by purchasing a small encumbrance against it, permitting foreclosure and buying in at the sale.

Did Fesler's lack of title constitute a failure of consideration so that the debt was not paid? Where there is a contract to convey real property lack of title in the vendor is ordinarily regarded as a failure of consideration. Jones v. Shaver, 6 Mo. 642. However, that

502

situation does not exist here. The parties to the agreement were Fesler, Inc., and Nelson Chesman Company. The latter, through mistake, chose to accept a deed from Fesler individually instead of from the company. Plaintiffs remained in a position to receive a deed from Fesler, Inc., upon request. They have the property. Under the circumstances, they may not now complain.

The chancellor decreed that the costs be assessed jointly against plaintiffs and Fesler. Courts of equity have the inherent and discretionary power to award costs. They may order one party or the other to pay the costs or may apportion them among the parties. Boatmen's Natl. Bank v. Rogers, 352 Mo. 763, 179 S. W. (2d) 102. In an equity proceeding where some issues are found for plaintiffs and some for defendants the court has considerable discretion in the allowance of costs. Bruegge v. State Bank of Wellston (Mo.), 74 S. W. (2d) 835. In the instant case the chancellor did not abuse his discretion in awarding costs as he did although assessing them jointly against the plaintiffs and Fesler could mean that plaintiffs might have to pay the entire costs or Fesler might have to do so. Under a rule similar to ours governing the allowance of costs in equity ▉ cases, the Georgia Supreme Court held that assessing costs against an alleged insolvent defendant primarily but alternatively against plaintiff was not an abuse of discretion. Biggers v. Noland, 175 Ga. 874, 166 S. E. 645.

As Fesler had entered his appearance in the case the personal judgment against him on counts one and twelve was proper. No appeal from this part of the judgment was perfected. Denying plaintiff's equitable relief and dismissing their petition as to counts two to eleven, inclusive, was also proper.

The judgment is affirmed. All concur.