Terry Lee NICKELS, Connie N. Nickels, James Gary Nickels and Norma N. Nickels, Plaintiffs–Respondents,

v.

Arthur Joe COHN, Christy L. Cohn and Christy L. Cohn, Personal Representative of the Estate of Harvey E. Nickels, Deceased, Defendants–Appellants,

and

Rita Jane Nickels, Waynesville Security Bank, Claude H. Morgan, Trustee for Waynesville Security Bank, Central Production Credit Association, Milton F. Yeary, as Trustee for Central Production Credit Association, Lloyd Green and Anna M. Green, Defendants.

Terry Lee NICKELS, Connie N. Nickels, James Gary Nickels and Norma N. Nickels, Plaintiffs–Respondents,

v.

CENTRAL PRODUCTION CREDIT ASSOCIATION and Milton F. Yeary, Trustee for Central Production Credit Association, Defendants–Appellants,

and

Rita Jane Nickels, Arthur Joe Cohn, Christy L. Cohn and Christy L. Cohn, Personal Representative of the Estate of Harvey E. Nickels, Deceased, Waynesville Security Bank, Claude H. Morgan, Trustee for Waynesville Security Bank, Lloyd Green and Anna M. Green, Defendants.

Terry Lee NICKELS, Connie N. Nickels, James Gary Nickels and Norma N. Nickels, Plaintiffs–Respondents,

v.

Lloyd GREEN and Anna M. Green, Defendants–Appellants,

and

Rita Jane Nickels, Arthur Joe Cohn, Christy L. Cohn and Christy L. Cohn, Personal Representative of the Estate of Harvey E. Nickels, Deceased, Waynesville Security Bank, Claude H. Morgan, Trustee for Waynesville Security Bank, Central Production Credit Association, Milton F. Yeary, as Trustee for Central Production Credit Association, Defendants.

Nos. 15444, 15472 and 15480.

Missouri Court of Appeals, Southern District, Division Two.

Jan. 5, 1989.

Motion for Rehearing or Transfer Denied Jan. 26, 1989.

W.H. Thomas, Jr., Thomas, Birdsong, Clayton & Haslag, Rolla, for plaintiffs-respondents.

John Z. Williams, Williams, Smallwood & Crump, Rolla, for defendants-appellants Arthur Joe Cohn, Christy L. Cohn and Christy L. Cohn, Personal Representative of the Estate of Harvey E. Nickels, Deceased.

Thomas W. Millington, Schroff, Glass & Newberry, Springfield, for defendants-appellants Cen. Production Credit Ass'n and Milton F. Yeary, as Trustee for Central Production Credit Ass'n.

Thomas J. O'Neil, Lebanon, for defendants-appellants Lloyd Green and Anna M. Green.

HOGAN, Judge.

Plaintiffs Terry Lee and Gary Nickels and their wives brought this action seeking, among other things: a) to declare a quitclaim deed fraudulent and void; b) to grant specific performance of a pre-emp-

tive covenant contained in another quitclaim deed, and c) to subordinate the interest of defendant Central Production Credit Association to the pre-emptive covenant. At the request of defendants Cohn, the trial court made findings of fact and conclusions of law. Those findings and conclusions are considerably more extensive than those correctly requested by defendants Cohn. *See Dardick v. Dardick,* 670 S.W. 2d 865, 867[1], 51 A.L.R.4th 1 (Mo. banc 1984). Nevertheless they form a proper basis for the assignment of error and for review on appeal. *Graves v. Stewart,* 642 S.W.2d 649, 651[3] (Mo. banc 1982); *Liebelt v. Commerce Bank of Springfield,* 703 S.W.2d 77, 78 (Mo.App.1985); *Lohrmann v. Carter,* 657 S.W.2d 372, 376 (Mo.App. 1983). Further, in this instance, they furnish a useful guide to the factual background of the case and the issues involved. We shall set them forth only slightly paraphrased. The docket entry which precedes the findings of fact and conclusions of law is as follows:

"Now on this 31st day of August, 1987, ... come the Plaintiffs, in person and by their attorney ...; and come the Defendants, Lloyd Green and Anna M. Green, in person, and by their attorney, ... Defendant Central Production Credit Association by its officers and its attorney ... and the remaining Defendants by their attorneys.... Defendants, Waynesville Security Bank and Claude H. Morgan, Trustee for Waynesville Security Bank, state that they have and claim no interest in the property at issue and are, therefore, dismissed as per stipulation filed. Thereupon, the parties submit Counts I and II of Plaintiffs' Petition to the court upon the pleadings, evidence and proof adduced, *provided, however,* that the determination of the amount to be paid by the Plaintiffs, Terry Lee Nickels and James Gary Nickels, if specific performance is ordered, shall be made after further hearing...." (Emphasis ours.)

The court then recited that the cause was taken under advisement, and on September 28, 1987, filed its findings of fact and conclusions of law. Paragraphs (1) and (2) are that plaintiffs Terry Lee Nickels and Con-

nie Nickels are husband and wife and plaintiffs James Gary Nickels and Norma N. Nickels are also husband and wife. The findings of fact continue thus:

"3. Harvey E. Nickels died on March 19, 1986, leaving as his heirs and devisees the following individuals:

"(a) Arthur Joe Cohn, 419 East Kingsbury, Springfield, Greene County, Missouri 65804;

"(b) Christy L. Cohn, 1759 South Delaware, Springfield, Greene County, Missouri 65804;

"(c) Rita Jane Nickels (now Rita Jane Campbell), P.O. Box 459, Waynesville, Pulaski County, Missouri 65583;

"(d) James Gary Nickels, Highway T, Waynesville, Pulaski County, Missouri 65583;

"(e) Terry Lee Nickels, 800 Washington Street, Oklahoma City, Oklahoma, and

"(f) Darrell Gene Nickels, 600–A Nickels Drive, Waynesville, Pulaski County, Missouri 65583.

"4. Defendant Rita Nickels (now Campbell) was the surviving spouse of Harvey E. Nickels, deceased. James Gary Nickels, Terry Lee Nickels and Darrell Gene Nickels are the sons and the only surviving children of Harvey E. Nickels, deceased. Arthur Joe Cohn and Christy L. Cohn are devisees of all real property owned by Harvey E. Nickels at the time of his death pursuant to the last will and testament of Harvey E. Nickels which has been duly admitted to probate by an order of the Probate Court of Pulaski County, Missouri, in May, 1986.

"5. Defendant Rita Jane Nickels (now Campbell), personal representative of Harvey E. Nickels' estate, is the acting personal representative of the aforesaid estate having been appointed by the Circuit Court of Pulaski County, Missouri, Probate Division, by an order entered prior to June 26, 1986.

"6. On or before 1960, Harvey E. Nickels was married to Wanda L. Nickels; and they owned real property located in Pulaski County, Missouri, more particularly de-

scribed as follows: [Here the court described a 227–acre parcel of realty situated in Pulaski County. The tract described is a farm and is referred to in the record as 'the Prewitt farm'].

"7. On April 26, 1968, the marriage of Harvey E. Nickels and Wanda L. Nickels was dissolved; and, pursuant to a property settlement agreement, Wanda L. Nickels agreed to quitclaim to Harvey E. Nickels the property described in paragraph 6, subject to the covenant that, if Harvey E. Nickels desired at any time to sell the property, he was to first give the parties' three sons, i.e., Terry Lee Nickels, James Gary Nickels and Darrell Nickels, fifteen (15) days' notice of his desire so to sell; and, further, if within (15) days the sons, or any one of them, desired to purchase said property, said son or sons would have the right to do so upon the payment to Harvey E. Nickels of a sum equal to the original cost of the property ($38,500.00) plus the additional payment of the cost of capital improvements made on the property since the original purchase of the property by Harvey E. Nickels and Wanda L. Nickels.

"8. Thereafter, pursuant to the aforesaid property settlement agreement, Wanda L. Nickels, on April 26, 1968, conveyed said property [the 227–acre tract] to Harvey E. Nickels, subject to the following covenant:

If the Grantee desires at any time to sell this property he shall first give the parties' three sons 15 days notice of his desire so to sell and if within said 15 days they or anyone or more of them shall desire to purchase said property he or they shall have the right to do so upon the payment to the Grantee [of] a sum equal to the original cost of $38,500.00 paid for said property by the present parties to this agreement, plus the additional payment of the amount of capital improvements made on said property since the original purchase of said property by these parties to this agreement.

Said quitclaim deed was filed on December 10, 1968, in Book 217, at page 492, in the Office of the Recorder of Deeds of Pulaski County, Missouri.

"9. Thereafter, Harvey E. Nickels caused to be filed a quitclaim deed dated September 17, 1971, allegedly between Gary Nickels and Norma Nickels, husband and wife, Terry Nickels and Connie Nickels, husband and wife, and Darrell Nickels, a single man, to Harvey E. Nickels, by which quitclaim deed Plaintiffs allegedly conveyed all right, title and interest in and to the property described in paragraph 6 to Harvey E. Nickels. Said alleged quitclaim deed was recorded on September 23, 1971, in Book 242, at page 177, in the Office of the Recorder of Deeds of Pulaski County, Missouri.

"10. Plaintiffs did not sign said quitclaim deed, and the signatures thereon alleged to be those of Plaintiffs are forgeries.

"11. At the time said quitclaim deed was recorded, Plaintiffs did not know of the alleged deed and the insertion of their names as grantors to Harvey E. Nickels.

"13. Thereafter, Harvey E. Nickels and Rita Jane Nickels, husband and wife, mortgaged the above-described property by deed of trust to Milton F. Yeary as Trustee for Farmers Production Credit Association. Said deed of Trust was dated December 3, 1980, and filed December 9, 1980, in Book 311, at page 25 in the Office of the Recorder of Deeds of Pulaski County, Missouri.

"14. Thereafter, Harvey E. Nickels and Rita Jane Nickels, husband and wife, mortgaged said property by deed of trust to Milton F. Yeary, Trustee for Farmers Production [Credit] Association. Said deed of trust was dated April 15, 1982, and filed April 22, 1982, in Book 318, at page 526 in the Office of the Recorder of Deeds of Pulaski County, Missouri. Central Production Credit Association is a federally chartered corporation formerly known as Farmers Production Credit Association.

"15. The note presently secured by said deeds of trust was made February 12, 1986. There is other security for said note, and it is uncertain whether that security alone will be enough to pay the balance, which at the time of trial was TWO HUNDRED FIFTY–FOUR THOUSAND TWO

HUNDRED SIXTY DOLLARS AND FOURTEEN CENTS ($254,260.14).

"16. Thereafter, Harvey E. Nickels and Rita Jane Nickels, husband and wife, conveyed to Lloyd Green and Anna M. Green, husband and wife, by warranty deed dated February 26, 1986, and filed February 26, 1986, in Book 352, page 529 of the Office of the Recorder of Deeds of Pulaski County, Missouri, two (2) acres of the property described in paragraph 6. Said two (2) acres is described as follows: [Here the court described a 2-acre tract with particularity, having noted it was part of the 227-acre tract].

"17. Prior to selling and conveying said property, Harvey E. Nickels did not notify James Gary Nickels or Terry Lee Nickels of his intention or desire to sell said property.

"18. Plaintiffs did not learn of the forged quitclaim deed described in paragraph 9 until about May, 1986, after the death of Harvey E. Nickels.

"19. Neither Terry Lee Nickels nor James Gary Nickels, nor anyone acting for them, were given notice of Harvey E. Nickels's [sic] desire to sell the property described in paragraph 6 or the part that was actually sold as described in paragraph 16.

"20. Terry Lee Nickels and James Gary Nickels are ready, willing and able to pay the amount to be determined as owing by them under the covenant set forth in paragraph 8.

"21. The purpose of said covenant was to permit the sons of Harvey E. Nickels and Wanda L. Nickels the opportunity to buy the property and keep it in the family because they had worked very hard on the property while their parents were married, and Wanda L. Nickels did not want her ex-husband to fritter away the property without their sons having the preemptive rights established by the covenant."

The court then drew the following conclusions of law:

"A. The quitclaim deed described above in paragraph 9 is a forgery and thus void as to the Plaintiffs. *Lewis vs. Barnett*, 694 S.W.2d 743, 746 (Mo.App., E.D.1985);

*Gross vs. Watts*, [206 Mo. 373], 104 S.W. 30, 37 (Mo.1907). Recording of the deed gave it no validity, and it gives no constructive notice and a claim of bona fides may not be based upon it. *Gross vs. Watts, supra*. The deed must be cancelled, set aside and held for naught.

"B. Plaintiffs, Terry Lee Nickels and James Gary Nickels, hold rights under the covenant described above in paragraph 8. Said rights are personal to them and will be extinguished by their deaths. The covenant does not inure to the benefit of their heirs or assigns and thus does not violate the Rule Against Perpetuities, as alleged by Defendants. *Kershner vs. Hurlburt*, 277 S.W.2d 619 (Mo.1955). Said covenant was and is binding upon Harvey E. Nickels and his heirs and assigns, including all of the Defendants herein.

"C. The family purposes stated in paragraph 21 above are valid family purposes to be accomplished by the covenant in question. Thus, the covenant is a reasonable restraint on alienation and valid. *Kershner vs. Hurlburt, supra; Bing vs. Burrus*, 106 Va. 478, 56 S.E. 222; *Hall vs. Crocker*, 192 Tenn. 506, 241 S.W.2d 548; and *Dodd vs. Rotterman*, 330 Ill. 362, 161 N.E. 756.

"D. The forged deed described in paragraph 9 above is void even as to subsequent bona fide purchasers. *Dunn vs. Miller*, 96 Mo. 324, 9 S.W. 640 (1888); 66 Am.Jur.2d *Records etc.*, Section 123; *Gross vs. Watts, supra*. Thus, all rights to the property held by Milton F. Yeary or his successor as trustee for Defendant, Central Production [Credit] Association, formerly known as Farmers Production Credit Association, are subordinate and subject to the rights of Plaintiffs under the covenant set forth in paragraph 8 above. In addition, the rights of Plaintiffs, Terry Lee Nickels and James Gary Nickels, under the covenant described in paragraph 8 above are superior to the rights of Defendants Lloyd Green and Anna M. Green. Because the conveyance to them was made without notice to said Plaintiffs, the warranty deed described in paragraph 16 above must be set aside and held for naught.

"E. Section 516.010, Revised Statutes of Missouri is the applicable Statute of Limitations. *Dunn vs. Miller, supra; Cox vs. Watkins,* [149 Kan. 209], 87 P.2d 243 (Ks.1939). Said Statute of Limitations did not begin to run until May, 1986, when Plaintiffs first knew or should have known of the forgery and the quitclaim deed. *Dunn vs. Miller, supra.* 37 Am.Jur.2d *Fraud and Deceit,* Section 412.

"F. Harvey E. Nickels evidenced his desire to sell the property described in paragraph 6 above by actually selling the two acres described in paragraph 16. However he did not give notice to Plaintiffs, Terry Lee Nickels and James Gary Nickels, as required by the covenant, and thereby breached said covenant. Said Plaintiffs have elected to purchase said property by filing this suit, and they have the right to do so. Not having an adequate remedy at law, they are entitled to specific performance. A specific tract of real estate is involved and it must be 'treated as unique for the purpose of specific performance of a contract to convey, "irrespective of special facts showing the inadequacy of a legal remedy." *Rice vs. Griffith,* 349 Mo. 373, 161 S.W.2d 220, 225. See also, *Farrington vs. Hays,* 353 Mo. 194, 182 S.W.2d 186, 190, certiorari denied 323 U.S. 797, 65 S.Ct. 441, 89 L.Ed. 636.' *McCullough vs. Newton,* 348 S.W.2d 138, 144 (Mo.1961). See generally 71 Am.Jur.2d *Specific Performance,* Sections 10 and 112."

Upon these findings of fact and conclusions of law, the trial court ordered:

"1. The quitclaim deed dated September 17, 1971, and recorded September 23, 1971, in Book 242, at Page 177, in the Office of the Recorder of Deeds of Pulaski County, Missouri, wherein Plaintiffs and Darrell Nickels were the grantors and Harvey E. Nickels was the grantee was and is fraudulent and void and the same [should] be and is hereby set aside and held for naught.

"2. Pursuant to the covenant in the quitclaim deed from Wanda L. Nickels to Harvey E. Nickels recorded on December 10, 1968, in Book 217, at Page 492 in the Office of the Recorder of Deeds of Pulaski County, Missouri, Plaintiffs, Terry Lee Nickels and James Gary Nickels, retained the pre-emptive right to purchase the property described in paragraph 6 above upon compliance with the terms of the covenant set forth in full in paragraph 8 above. The rights of Milton F. Yeary and his successor as trustee for Central Production Credit Association and of Central Production Credit Association, formerly known as Farmers Production Credit Association, are hereby declared subject and subordinate to the rights of Plaintiffs as above described.

"3. The conveyance by Harvey E. Nickels and Rita J. Nickels to Defendants, Lloyd Green and Anna M. Green by warranty deed dated February 26, 1986, and filed the same date in Book 352 at Page 529 in the Office of the Recorder of Deeds of Pulaski County, Missouri, of the two (2) acres described as follows was made without notice to Plaintiffs, Terry Lee Nickels and James Gary Nickels, and the same must be and is hereby set aside and for naught held, subject to further determination of the rights as among the Defendants to the amounts to be paid by Plaintiffs and the rights among Defendants otherwise: [Here follows a description of the 2–acre tract deeded to defendants Lloyd Green and Anna M. Green].

"4. The covenant in the quitclaim deed described above in paragraph 8 shall be specifically performed and carried into execution. Defendant, Rita Jane Nickels (now Rita Jane Campbell), personal representative of the Estate of Harvey E. Nickels, deceased, is hereby ordered to execute to Plaintiffs, Terry Lee Nickels and James Gary Nickels, a personal representative's deed conveying all of the right, title and interest of the said Harvey E. Nickels, deceased, to Plaintiffs, in and to the land described as follows which is situate in Pulaski County, Missouri: [Here is inserted the description of the 227–acre farm known as the Prewitt farm]. Said conveyance shall be made upon payment by said Plaintiffs of the amount due under said covenant to be later determined by this court. The relative rights of Defendants to the sums due under the covenant shall also be determined by later order of this court.

"5. Defendant, Rita Jane Nickels (now Rita Jane Campbell), personal representative of the Estate of Harvey E. Nickels, deceased, shall pay from estate funds the costs accrued herein to date."

■ The findings and orders we have recited show that one count of the plaintiffs' petition has not been tried and as to the two counts which were submitted, the parties' rights have not been fully adjudicated. As a general rule, an appellate court lacks jurisdiction if the judgment appealed from is not final. *Taylor v. F.W. Woolworth Co.*, 641 S.W.2d 108, 110 (Mo. banc 1982). One exception to this general principle was authorized by former Rule 81.06 which was in effect when this case was tried. Rule 81.06 provided, in material part that:

"... When a separate trial is had before the court without a jury of claims arising out of the same transactions, occurrences or subject matter as the other claims stated or joined in the case the judgment entered shall not be deemed a final judgment for purposes of appeal ... unless specifically so designated by the court in the judgment entered...."

Before Rule 81.06 was finally repealed, it was subject to varying interpretations, but our Supreme Court held that the quoted part of the rule vested the trial court with discretion to allow an appeal in cases coming within its terms. *Speck v. Union Electric Company*, 731 S.W.2d 16, 20[1] (Mo. banc 1987). In this instance, the trial court entered the following order:

"If the restraint contained in the quitclaim deed and in the decree of divorce is finally found to be invalid, litigation in this case is at an end. If the restraint is found to be valid, there will be substantial additional discovery and litigation to establish the purchase price for the land in question and the amount of damages, if any, to which Plaintiffs are entitled under Count III of their Petition. A separate trial has been held before the Court without a jury of claims arising out of the same transactions, occurrences and subject matter as other claims joined in this case. Because of the possibility that the restraint could be found invalid by an Appellate Court and thus end the litigation in this cause, the Court finds it is in the interest of judicial economy that its Judgment be deemed final for purposes of appeal."

When former Rule 81.06 was in effect, there was authority for the proposition that if a particular order or decision effectively disposed of the case, that order might be designated as final. *Talkington v. J.S. Alberici Const. Co.*, 528 S.W.2d 5, 6[1, 2] (Mo.App.1975). We agree with the trial court's ruling in this case, and hold that the appeals are properly before this court.

Three appeals have been consolidated and laid before the court. Appeal Number 15444 is the appeal of defendants Arthur Joe Cohn, Christy L. Cohn and Christy L. Cohn as personal representative of the Estate of Harvey E. Nickels, deceased. Arthur Joe and Christy Cohn are entitled to take the real property in question under the last will and testament of Harvey E. Nickels, deceased. Christy L. Cohn is also personal representative of the estate of Harvey E. Nickels, having replaced Rita J. Nickels (now Rita J. Campbell) in that capacity. The claims of these appellants are that: a) the restrictive covenant in issue is void because it constitutes an unreasonable restraint on alienation, and b) the covenant violates the Rule against Perpetuities. Appeal No. 15472 is the appeal of Central Production Credit Association and Milton F. Yeary as trustee for Central Production Credit Association. Central Production Credit Association (hereinafter P.C.A.) contends: a) that the trial court erred in subordinating its interest in the land in question to that of the plaintiffs for the reason that the plaintiffs' right to the subject realty "does not constitute a valid and prior lien against the realty, thereby warranting a subordination of the mortgage liens and interests" of P.C.A.; b) that P.C.A. should be afforded the legal protection of a bona fide purchaser for value; c) that in any event the plaintiffs were not entitled to specific performance of the covenant contained in the quitclaim deed, and d) the restrictive covenant violated the Rule

against Perpetuities and constituted an unreasonable restraint on alienation of the property. Appeal No. 15480 is the appeal of defendants Lloyd Green and Anna M. Green. They are the purchasers of the 2–acre tract sold by Harvey E. Nickels and Rita Jane Nickels in February 1986. They have contented themselves by saying that they "adopt" the briefs of the other appellants and by asserting that the restrictive covenant "violates both the rule against unreasonable restraints on alienation and the rule against perpetuities and is void." We therefore consider first whether the covenant found in the quitclaim deed of April 26, 1968, conveying Wanda L. Nickels' interest in the 227–acre "Prewitt farm" to Harvey E. Nickels, was void either because: a) it violates the Rule against Perpetuities; or b) constitutes an unreasonable restraint on alienation.

## I

### (a)

*What is the nature of the covenant or restriction?*

In considering this preliminary question, we must bear in mind the circumstances in which the covenant or restriction was created. Harvey E. Nickels was a physician who lived and practiced in Pulaski County for many years. He and Wanda L. Nickels were married on August 10, 1941. Three sons were born of this marriage, Terry Lee Nickels, James Gary Nickels and Darrell Gene Nickels. Darrell did not join as a plaintiff. Harvey and Wanda Nickels were divorced in Pulaski County on April 26, 1968. A copy of the decree, before us as plaintiffs' exhibit 2, makes it appear that Dr. and Mrs. Nickels owned a great deal of property. The decree incorporates a property settlement agreement. As part of this property settlement agreement, Wanda Nickels agreed to convey to Harvey E. Nickels:

"[A]ll right, title and interest which [Wanda L. Nickels] has or claims to have in and to the Prewitt farm of approximately 260 acres, more or less, provided, however, if [Harvey E. Nickels] desires at any time to sell this property he shall

first give the parties' three sons 15 days notice of his desire so to sell and if within said 15 days they or anyone or more of them shall desire to purchase said property he or they shall have the right to do so upon the payment to [Harvey E. Nickels] a sum equal to the original cost of $38,500.00 paid for said property by the present parties to this agreement, plus the additional payment of the amount of capital improvements made on said property since the original purchase of said property by these parties to this agreement."

The deed was executed April 26, 1968. By its terms, Wanda L. Nickels quitclaimed two parcels of property, one containing 175 acres, the other 52.74 acres. This is the land referred to in Paragraph 6 of the court's findings of fact. It is that tract referred to as the Prewitt farm. Wanda Nickels testified, without objection, that she and her husband had been married for 26 years and she thought what she and her husband owned should belong to their sons after they were through using it. Dr. Nickels insisted he should have "something in his name." Wanda agreed, provided the restriction just noted was incorporated in the deed.

To reiterate, the covenant contained in the deed reads thus:

"If the Grantee desires at any time to sell this property he shall first give the parties' three sons 15 days notice of his desire so to sell and if within said 15 days they or anyone or more of them shall desire to purchase said property he or they shall have the right to do so upon the payment to the Grantee [of] a sum equal to the original cost of $38,500.00 paid for said property by the present parties to this agreement, plus the additional payment of the amount of capital improvements made on said property since the original purchase of said property by these parties to this agreement."

 This provision is properly called a pre-emption or right of pre-emption. Such a provision differs from an option. An option creates in the optionee a power to compel the owner of property to sell it at a

stipulated price whether or not he is willing to part with ownership. A pre-emption does not give the pre-emptioner the power to compel a sale; it merely requires the owner, when and if he decides to sell, to offer the property first to the person entitled to the pre-emption, at the stipulated price. Upon receiving such an offer, the pre-emptioner may elect to buy. If he decides not to buy, then the owner of the property may sell to anyone. *Beets v. Tyler,* 365 Mo. 895, 902, 290 S.W.2d 76, 81 (1956); 6 American Law of Property § 26.64 (Casner ed. 1952). A right of pre-emption is subject to the Rule against Perpetuities and to the Rule against Unreasonable Restraints on Alienation. *Kershner v. Hurlburt,* 277 S.W.2d 619, 623[3] (Mo. 1955); *Tucker v. Ratley,* 568 S.W.2d 797, 800 (Mo.App.1978); T. Hellmuth, Real Estate Law § 8, p. 16 (1985).

### (b)
### *Does the pre-emption violate the Rule against Perpetuities?*

■ The Rule against Perpetuities, in abstract form, prohibits the granting of an estate which will not necessarily vest within a time limited by a life or lives then in being and 21 years thereafter together with the period of gestation necessary to cover cases of posthumous birth. *Trautz v. Lemp,* 329 Mo. 580, 595, 46 S.W.2d 135, 138 (banc 1932); *Nelson v. Mercantile Trust Company,* 335 S.W.2d 167, 172 (Mo. 1960). However, if the pre-emptive right with which we are concerned is *personal* to either Harvey E. Nickels or his sons the right will necessarily terminate within 21 years of a life in being. 61 Am.Jur.2d Perpetuities and Restraints on Alienation § 65, p. 76 (1981). The pre-emptive right created by the quitclaim deed from Wanda L. Nickels to Harvey E. Nickels, extends to "the parties' three sons." There is no provision in the deed which further extends the pre-emptive right to the "heirs or assigns" of the three sons of the parties to the deed. The deed, on its face, appears to create a pre-emptive right which is personal to the parties' three sons and which terminates upon their death. All three sons were in esse at the time the pre-emptive right was created. The duration of the right is measured by the lives of the three sons as lives in being and the Rule against Perpetuities is not violated. *Kershner v. Hurlburt,* 277 S.W.2d at 623[5]; *see also Roemhild v. Jones,* 239 F.2d 492, 495–96[6, 7] (8th Cir.1957).

Defendants Cohn argue that the clause creating the pre-emptive right violates the Rule against Perpetuities because—as we understand their argument—the property settlement agreement was a third-party beneficiary contract; rights under such a contract are assignable, and as a general rule if a contract right is assignable, it will survive the death of a party. By analogy, the defendants contend, the duration of the restraint (pre-emptive right) is unlimited both as to Harvey E. Nickels and his heirs and assigns and as to his children and their heirs and assigns.

We find the argument unpersuasive. The property settlement itself was made binding on the heirs and assigns of the parties to the agreement. The quitclaim deed executed pursuant to the property settlement agreement is a conveyance to Harvey E. Nickels, his heirs and assigns, but neither paragraph (d) of the property settlement nor the pre-emption found in the quitclaim deed from Wanda L. Nickels to Harvey E. Nickels purports to extend the pre-emptive right to the heirs and assigns of the pre-emptioners. We do not agree with the Cohns' interpretation of the contract or the deed, but assuming, without deciding, that the wording of the deed is susceptible of two constructions, that construction which avoids violation of the Rule against Perpetuities is to be preferred. *Trautz v. Lemp,* 329 Mo. at 596, 46 S.W.2d at 139; *St. Louis Union Trust Co. v. Bassett,* 337 Mo. 604, 621, 85 S.W.2d 569, 578, 101 A.L.R. 1266 (1935); Restatement of Property § 375 (1944); 61 Am.Jur.2d Perpetuities and Restraints on Alienation § 8, p. 15.[1] The reasonable construction of the pre-emption is that it is personal to the sons. So construed, the pre-emption does

1. *See also* W. Fratcher, The Missouri Perpetui- ties Act, 45 Mo.L.Rev. 240, 251, n. 75.

not violate the Rule against Perpetuities, and the provision creating it is not void for that reason.

### (c)
#### *Is the pre-emptive right an unreasonable restraint on alienation?*

As previously noted, a right of pre-emption is subject not only to the Rule against Perpetuities, but also to the Rule against Unreasonable Restraints on Alienation. Commenting upon the nature of the Rule against Unreasonable Restraints, our Supreme Court has said:

"... That rule is based upon (among other things) the desirability of 'keeping property responsive to the current exigencies of its current beneficial owner' and upon the desirability of avoiding the retardation of the natural development of a community by removing property from the ordinary channels of trade and commerce. (Citations omitted). However, not every restraint on alienation is undesirable and not every restraint on alienation should be prohibited. (Citations omitted)."

*Kershner v. Hurlburt,* 277 S.W.2d at 623–24[6, 7].

▮ Factors to be considered in determining whether a pre-emptive right constitutes an unreasonable restraint on alienation include: a) the purpose or purposes for which the restraint is imposed; b) the duration of the restraint, and c) the method of determining the price to be paid. These factors must be considered together and in relation to each other. *Missouri State Highway Commission v. Stone,* 311 S.W.2d 588, 589 (Mo.App.1958).

With respect to the contention that the pre-emptive right is invalid as an unreasonable restraint on alienation, the trial court has found that the purpose of the covenant was to permit the sons of Harvey E. and Wanda L. Nickels to buy the property and keep it in the family. The court further concluded that the purpose or purposes to be served by the covenant were reasonable,

and adjudged the covenant to be a reasonable restraint on alienation. It also indicated (in paragraph 7 of its findings of fact) that it regards the pre-emption as obligating the plaintiffs to pay a sum equal to the original cost of the property plus the cost of capital improvements made on the property since it was purchased by Harvey E. and Wanda L. Nickels.

As we have noted, this court held in *Missouri State Highway Commission v. Stone,* 311 S.W.2d at 589, that there are three factors to be considered in determining whether a restraint on alienation is reasonable. The first matter to be considered is the duration of the restraint. It was suggested in *Kershner,* 277 S.W.2d at 625, that if the duration of the pre-emptive right did not violate the Rule against Perpetuities, the pre-emptive right would not be considered invalid because of its duration. It has also been suggested that a majority of jurisdictions have imposed the test of the period of the Rule against Perpetuities,[2] and our examination of the authorities indicates this is true. Having determined that the duration of the restraint does not violate the Rule against Perpetuities, we find the duration of the restraint upon alienation to be reasonable.

Is the provision for determining the price objectionable? We conclude it is not. Requiring sale at a *fixed* price, without reference to any future increase in value, may operate as an unreasonable restraint on alienation. *Beets v. Tyler,* 365 Mo. at 902, 290 S.W.2d at 81. In this case, the trial court has found the pre-emptioners will be obliged to pay the sum of $38,500 plus the cost of improvements since the property was purchased. This is not a stipulated price per acre, as was specified in *Tucker v. Ratley,* 568 S.W.2d at 799, and the pre-emptive provision is not invalid because the purchase price is fixed.

Was the purpose of the restraint reasonable? Again, in *Kershner,* it was suggested that the validity of a restraint on alienation may depend "upon the purpose or

---

**2.** R. Boyer and R. Spiegel, Land Use Control: Pre–Emptions, Perpetuities and Similar Re- straints, 20 U. Miami L.Rev. 148, 177 and cases cited n. 177 (1965).

purposes to be accomplished by the particular [provision]." *Kershner v. Hurlburt,* 277 S.W.2d at 625–26. As noted there, in *Bing v. Burrus,* 106 Va. 478, 56 S.E. 222 (1907), a restraint, that if any of the testator's sons to whom property was devised desired to sell his part of the devise, the "preference of purchase" was to be given to one or both of the other sons, provided the pre-emptioner was to pay as much as could be obtained from an outsider, was held to be valid. In *Hall v. Crocker,* 192 Tenn. 506, 241 S.W.2d 548 (1951), the restraint was worded thus: " 'It is hereby expressly agreed and understood that should [the grantee] desire to sell this land or should she die then the said W.L. Morris or his legal representatives shall have the exclusive right to buy the same at the actual cost of improvements on said land should he so desire.' " In *Kershner,* it was noted that in the *Hall* case, the consideration was "love and affection" and the grantor had some apparent desirable purpose to be accomplished by the restraint. *Kershner v. Hurlburt,* 277 S.W.2d at 625. There is a reasonable degree of analogy between the pre-emption created in this case and those discussed in the cases cited in *Kershner.* The pre-emptive right was created by the parents of the pre-emptioners so their sons might have a reasonable chance to purchase the property if Dr. Harvey E. Nickels decided to sell it. The purpose of the pre-emption, as the trial court found, was reasonable.

What we have held to this point disposes of the assignments of error in Appeal No. 15444, the appeal of defendants Cohn, and Appeal No. 15480, the appeal of defendants Lloyd and Anna M. Green. We must now consider Appeal No. 15472, the appeal of Central Production Credit Association and its Trustee, Milton F. Yeary.

## II

Appellants P.C.A. and its trustee, Milton F. Yeary, have made three assignments of error distinct and separate from the points asserted by the other defendants. Some additional facts must be restated, perhaps repetitively, in connection with this appeal. After Wanda L. Nickels conveyed the Prewitt farm to Harvey E. Nickels by quitclaim, a second conveyance of that property was executed and filed for record on September 23, 1971. The second deed purported to quitclaim all the interest of James Gary Nickels and Norma Nickels, Terry L. Nickels and Connie Nickels, and Darrell Nickels—the pre-emptioners—to Harvey E. Nickels. Nevertheless the plaintiffs had proof and the trial court found in paragraph 10 of its findings of fact that the plaintiffs did not sign the second quitclaim deed and the signatures purporting to be those of the plaintiffs were forgeries. The court further found that at the time the second quitclaim deed was recorded, plaintiffs did not know their names had been affixed to this deed as grantors. Thereafter, Harvey E. Nickels and his second wife, Rita Jane Nickels, mortgaged the Prewitt farm—the 227–acre tract—to the P.C.A. on two occasions. When the case was tried, the balance of the note secured by these two deeds of trust was $254,-260.14. There was other security for the note, but it was uncertain whether the security, apart from the land, was sufficient to satisfy the obligation secured. The trial court concluded as a matter of law that the forged deed was void even as to subsequent bona fide purchasers and therefore all rights held by Milton F. Yeary or his successor as trustee for P.C.A. were subordinate to the rights of the plaintiffs as pre-emptioners.

### (a)
### *Is the interest of the mortgagee necessarily superior to that of the pre-emptioners?*

In this court, defendant P.C.A. asserts that the original quitclaim deed created no interest superior to their liens under the deeds of trust executed by Harvey E. and Rita Jane Nickels. P.C.A. asserts, without particular citation of authority, that the covenant in the first quitclaim deed created nothing more than an unvested, contingent right of first refusal which did not mature before the deeds of trust had been executed. Therefore, P.C.A. argues, its interest should not have been subordinated to

that of the pre-emptioners. Our attention is called to *Publicity Bldg. Realty Corporation v. Thomann*, 353 Mo. 493, 183 S.W. 2d 69 (1944), wherein our Supreme Court held that a general warranty deed providing the grantee could repurchase the property for the same consideration for which it was conveyed and obliging the grantee to offer the property to the grantor before selling it to anyone else did not convert the deed into a mortgage. We agree the court held that the 2–year option to purchase did not convert the deed into a mortgage, but essentially what the opinion held was that the intention of the parties was the controlling factor. *Publicity Bldg. Realty Corporation v. Thomann*, 353 Mo. at 501, 183 S.W.2d at 73[10, 11]. The case does not support P.C.A.'s position. The pre-emptioner's interest could be superior to P.C.A.'s interest without being an interest of the same order.

■ The interest which a right of pre-emption confers upon the pre-emptioner has been variously defined. In *Weber v. Texas Co.*, 83 F.2d 807, 808 (5th Cir.1936), a right similar to the pre-emption at issue was defined as "a continuing and preferred right to buy ... whenever the lessor desires to sell." In *Libby v. Winston*, 207 Ala. 681, 93 So. 631, 633 (1922), a right of pre-emption was held to create a provision for reverter for breach of condition subsequent, so the grantee took a conditional fee not subject to the Rule against Perpetuities. Legal commentaries simply say that classification of the right of pre-emption is difficult and subject to considerable confusion.[3] The straightforward answer to P.C.A.'s contention is that the grantor of the deed of trust could convey to the trustee the interest he held in the property, and no more. *Michie v. National Bank of Caruthersville*, 558 S.W.2d 270, 275 (Mo.App. 1977). A mortgagee is chargeable with notice of any properly recorded agreement or judicial proceeding affecting the title to the land or creating a charge on it. 59 C.J.S. Mortgages § 239, p. 310–11 (1949). The interest of which the record itself gives notice includes conditions or covenants con-tained in deeds. *Federal Land Bank of St. Louis v. Miller*, 184 Ark. 415, 42 S.W. 2d 564 (1931) (condition providing for support and maintenance); *First Nat. Bank of Eutaw v. Barnes*, 229 Ala. 612, 159 So. 68, 70 (1935) (grantee's agreement to pay debts of grantor's parents); *Iowa Farm Credit Corporation v. Halligan*, 214 Iowa 903, 241 N.W. 475, 476 (1932) (covenant not to sell the land without the grantor's consent). The mortgagee had notice of the pre-emptioners' interest. The contention is without merit.

(b)

*Should P.C.A. be afforded the protection of an innocent purchaser for value?*

■ A further closely related point made by P.C.A. is that the trial court erred in ruling that its claim to the status of a bona fide purchaser may not be based upon the quitclaim deed recorded in 1971 because, it argues, the equities evidenced by the facts are not equal and are in favor of P.C.A. The merits of this argument, as presented, turn upon the legal effect of a forged deed. The conclusions of law of which complaint is made here are those numbered (A) and (C) by the trial court. The trial court held, to repeat, that the quitclaim deed of 1971—the forged deed—was void as to the plaintiffs, that recording it gave it no validity, and no claim of bona fides could be based on it. Further, the trial court held that the forged deed was void even as to subsequent bona fide purchasers.

It is well established that a forged deed is absolutely void and transfers nothing. *Gross v. Watts*, 206 Mo. 373, 395–96, 104 S.W. 30, 37 (1907); *Lewis v. Barnett*, 694 S.W.2d 743, 746 (Mo.App.1985). P.C.A. claims it should be afforded the protection of a bona fide purchaser for value, but the deed is void and not merely voidable and a mortgage can be of no higher dignity than the deed on which it is based. *Lincoln Building & Loan Ass'n v. Cohen*, 292 Ky. 234, 165 S.W.2d 957, 958[1] (1942). Further, it is the general law that a void deed gives no constructive notice and a claim of

---

**3.** *See* R. Boyer and R. Spiegel, *supra*, n. 2, 20 U. Miami L.Rev. at 152.

bona fides may not be based on a void instrument, even when it is recorded in the manner prescribed by statute. *Hoffer v. Crawford*, 65 N.W.2d 625, 631[9] (N.D. 1954); 66 Am.Jur.2d Records and Recording Laws § 123, p. 415 (1973).

P.C.A. cites cases which it maintains afford it the status of a bona fide purchaser, but it does so without regard to the precedents which charge a mortgagee with knowledge of the record. Our attention is called to *Dreckshage v. Community Fed. S. & L. Ass'n*, 555 S.W.2d 314, 332 (Mo. banc 1977), wherein our Supreme Court held that in some circumstances a mortgagee of real property is regarded as a purchaser and is entitled to the same protection given a bona fide purchaser. To be accorded such status, the court held, the mortgagee must have had neither actual nor constructive notice of outstanding rights of others in the property. *Dreckshage v. Community Fed. S. & L. Ass'n*, 555 S.W.2d at 322. In this case, P.C.A. had the notice afforded by the record; it is in no position to maintain it had neither actual nor constructive notice of the rights of others in the 227–acre farm. *Dreckshage* and like cases do not aid P.C.A. here.

(c)

*Did the trial court err in holding that the plaintiffs were entitled to specific performance?*

■ P.C.A.'s third point is that the trial court erred in holding the plaintiffs' were entitled to specific performance of the covenant contained in the 1968 quitclaim deed because the plaintiffs' had an adequate remedy at law. P.C.A. also contends that the pre-emptive right was too indefinite to be specifically performed.

We cannot agree. In this jurisdiction it has been held time and again that a tract of land is unique, entitling a purchaser to specific performance of a contract for its purchase, irrespective of special facts showing inadequacy of the purchaser's legal remedy. *Wilkinson v. Vaughn*, 419 S.W.2d 1, 5 (Mo.1967); *Cummins v. Dixon*, 265 S.W.2d 386, 398[2], 47 A.L.R.2d 441, 455 (Mo.1954). Moreover, the pre-emptive right fixed the amount to be paid at a sum determinable under the provisions contained in the 1968 quitclaim deed. The pre-emption was not so equivocal, ambiguous and uncertain as to prevent specific performance. *Cummins v. Dixon*, 265 S.W.2d at 395–96[13], 47 A.L.R.2d at 452–53. If the subject has not been directly addressed in this jurisdiction, it has been directly held in other jurisdictions that breach of a right of pre-emption is a breach of contract for which the remedy of specific performance is available. *See, e.g., Martin v. Lott*, 482 S.W.2d 917, 920[1–3], 60 A.L.R.3d 1139, 1142 (Tex.Civ.App.1972). The trial court did not err in ordering specific performance of the pre-emptive covenant.

Finally, we take notice of P.C.A.'s claim, which is not very clearly articulated, that the "equities are not equal" and that its interest was somehow equitably superior to the claim of the pre-emptioners. The abstract rule undoubtedly is that when one of two equally innocent parties must lose because of a third party's fraud, if the equities are equal, he who has the first lien or claim in point of time will be protected. *Lustenberger v. Hutchinson*, 343 Mo. 51, 62, 119 S.W.2d 921, 927 (1938). The pre-emptive right was first in time, and according to this general rule, was entitled to priority. Perhaps there are other reasons why P.C.A.'s equity should be superior to that of the pre-emptioners, but they have not been developed on this appeal.

P.C.A.'s final point is that the pre-emption is void. This is the same point made by the other appellants. We need not repeat our conclusions.

We find no error materially affecting the merits of the action for any reason briefed or argued in this court; accordingly, the judgment is affirmed.

MAUS, J., concurs.

FLANIGAN, J., concurs in part; dissents in part.

PREWITT, P.J., recused.

FLANIGAN, Judge, concurring in part; dissenting in part.

The petition is in three counts. Divers cross-claims and counterclaims were filed. In a pretrial order the trial court limited the trial to Count I of the petition and "whether or not specific performance should be granted on Count II" of the petition.

Count I, in effect, sought a declaratory judgment. After pleading the underlying facts, Count I requested the following relief: (1) a declaration that the quitclaim deed dated September 17, 1971, is void as a forged document; (2) a declaration that the preemptive right or right of first refusal (hereinafter called "the restraint") contained in the quitclaim deed of April 26, 1968, is valid; (3) a declaration that the interests of the trustee and the Production Credit Association under the deeds of trust are subordinate to the restraint; and (4) cancellation of the deed of February 26, 1986, conveying two acres of the Prewitt farm to the Greens, or a declaration that the grantees' interest under that deed is subordinate to plaintiffs' rights under the restraint.

Count II incorporated the factual allegations of Count I and further alleged that plaintiffs have no adequate remedy at law. The prayer of Count II requested specific performance of the restraint, including execution of a deed by the personal representative of the estate of Harvey E. Nickels, deceased, conveying the Prewitt farm to the plaintiffs "upon payment by plaintiffs to [the personal representative] of the amounts required under [the restraint]."

The trial court found the issues on Count I in favor of the plaintiffs and granted the relief requested. With respect to Count II, however, the trial court purported to find in favor of the plaintiffs and ordered the personal representative to execute the requested deed "upon payment by plaintiffs of the amount due under said [restraint] to be later determined by this court. The relative rights of defendants to the sums due under [the restraint] shall also be determined by later order of this court."

"It is the final judgment on a claim, not the ruling on a pleaded issue, that is ap-pealable." *Weir v. Brune*, 364 Mo. 415, 262 S.W.2d 597, 600 (1953). A judgment which is indefinite is void and unenforceable. *Luna v. Grisham*, 620 S.W.2d 427, 428[1] (Mo.App.1981). (Citing authorities.) A judgment must be in such form that execution may issue without requiring external proof and another hearing. *Wyma v. Kauffman*, 665 S.W.2d 82, 83[2] (Mo. App.1984); *Luna v. Grisham*, supra, at 428[2]. The quoted portion of the trial court's ruling with respect to Count II makes that ruling indefinite. It also requires external proof and another hearing. Under the foregoing authorities the portion of the trial court's judgment which purports to adjudicate the rights of the parties with respect to Count II is void and not appealable.

The trial court did designate its judgment as a final one for purposes of appeal, as authorized by former Rule 81.06, now repealed. That order was effective with respect to Count I and the claims contained in it. See *Speck v. Union Electric Company*, 731 S.W.2d 16, 20 (Mo. banc 1987). The judgment on Count I is properly here.

I concur in the portion of the majority opinion which affirms the judgment on Count I. I dissent from that portion of the majority opinion which purports to adjudicate Count II.